[No. B158267. Second Dist., Div. Five. July 19, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
LEQUAN WESTBROOK, Defendant and Appellant.

**COUNSEL**

Jonathan B. Steiner and Richard L. Fitzer, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General,

Marc J. Nolan and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, Lequan Westbrook, appeals after entry of a no contest plea to a charge of cocaine possession in violation of Health and Safety Code section 11350, subdivision (a) and a state prison sentence contending he was eligible for participation in a Penal Code section 1210 et seq. drug treatment program. Defendant had previously been found in a juvenile court delinquency proceeding to have committed a robbery, a violation of Penal Code section 211. The trial court concluded defendant was statutorily ineligible for a drug treatment program pursuant to Penal Code section 1210.1, subdivision (b)(1) because he had previously been adjudicated of committing a robbery in the juvenile court delinquency proceeding. Defendant contends that because the robbery finding occurred in the context of a juvenile delinquency proceeding, he was never "convicted" of a serious or violent felony within the meaning of Penal Code section 1210.1, subdivision (b). We agree with defendant.

Defendant, a gang member who has used 11 different aliases, two birth dates, and five different Social Security numbers, has a lengthy criminal record. On May 13, 1989, as a juvenile, defendant was arrested on a burglary charge and later on October 2, 1989, placed home on probation. (Pen. Code, § 459; Welf. & Inst. Code, § 602.) While on probation on December 14, 1991, defendant, once again as a juvenile, was arrested for trespassing. (Pen. Code, § 602.) On February 26, 1992, he was placed in camp. On October 9, 1992, he was arrested for a violation of Health and Safety Code section 11352, subdivision (a) and later on October 29, 1992, placed home on probation. On September 1, 1992, defendant was arrested for driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a) and once again placed in camp. On February 18, 1993, defendant was arrested for robbery in violation of Penal Code section 211. After the delinquency petition was sustained, he was ordered once again placed in camp. Defendant's last arrest as a juvenile occurred on March 23, 1994, when he was arrested for possession of a controlled substance and drug paraphernalia. (Health & Saf. Code, §§ 11350, subd. (a), 11364.) On October 7, 1994, defendant was committed to the California Youth Authority.

On August 29, 1994, prior to his youth authority commitment, defendant was arrested as an adult for violation of Los Angeles County Ordinance No. 13.18.010, drinking in public. He was convicted of a misdemeanor and spent

seven days in jail. On November 5, 1994, defendant was arrested and later convicted of misdemeanor carrying a concealed weapon in violation of Penal Code section 12025, subdivision (a)(2). Placed on 24 months' summary probation, defendant was required to spend 60 days in the county jail. On February 9, 1998, defendant was arrested for felony weapons possession in violation of Penal Code section 12025, subdivision (b)(1). Upon conviction, he was sentenced to prison. On May 21, 1999, defendant was arrested and later on July 7, 1999, convicted of drug possession in violation of Health and Safety Code section 11377, subdivision (a). Defendant was then sentenced to state prison for 28 months. On November 11, 2000, defendant was once again arrested for a violation of Health and Safety Code section 11377, subdivision (a). He was placed on formal probation for 36 months.

The evidence adduced at the preliminary examination indicated defendant on January 18, 2002, at approximately 2:30 a.m. was arrested for being under the influence of a controlled substance in violation of Health and Safety Code section 11550, subdivision (a). Upon being arrested, defendant was searched by a deputy sheriff. The deputy found crack cocaine in defendant's right front pants pocket. The crack cocaine weighed .31 grams. At the time of defendant's January 18, 2002, arrest, he was both on parole and felony probation. At the time of his arrest, defendant was also subject to a parole hold.

Defendant pled no contest to cocaine possession in violation of Health and Safety Code section 11350, subdivision (a). He also admitted that he had previously been convicted for purposes of Penal Code sections 667, subdivisions (b) through (i) and 1170.12 of robbery. Before the no contest plea was entered, defense counsel argued that defendant was entitled to participate in a drug treatment program pursuant to Penal Code section 1210 et seq. The trial court disagreed noting that defendant was ineligible for participation in a Penal Code section 1210 et seq. drug treatment program because he had previously been convicted of a serious felony, robbery, within the meaning of Penal Code sections 667, subdivisions (b) through (i) and 1170.12 and had not remained free of prison custody for the requisite period of time. Defendant then entered his no contest plea. Prior to sentencing, defense counsel reiterated the contention that defendant was entitled to participation in a drug treatment program pursuant to Penal Code section 1210 et seq. The trial court then sentenced defendant to 2 years, 8 months in state prison. The trial court, upon defendant's application, issued a probable cause certificate pursuant to Penal Code section 1237.5 and rule 31(d) of the California Rules of Court.

Defendant argues that he was entitled to participate in a drug treatment program pursuant to Penal Code section 1210 et seq. The Attorney

General has filed an eight-page brief agreeing with defendant's arguments. The Attorney General agrees that defendant is entitled to a reversal of the judgment and the matter be remanded for resentencing. In response to the concession of the Attorney General, defendant has requested that the remittitur issue forthwith. As will be noted, we are in agreement with the parties that defendant was entitled to participate in a drug treatment program pursuant to Penal Code section 1210 et seq. However, in the absence of an agreement by the Attorney General, we cannot direct forthwith issuance of the remittitur.

The trial court found defendant ineligible for drug treatment under Proposition 36, the "Substance Abuse and Crime Prevention Act of 2000." (Pen. Code, § 1210 et seq.) The trial court reasoned that defendant had been convicted of a serious felony, robbery, which rendered him ineligible for a drug treatment program. Penal Code section 1210.1 sets forth the scope of eligibility for participation in a drug treatment program. Penal Code section 1210.1, subdivision (a)[1] identifies the right of a person convicted of a nonviolent drug offense to receive probation and narcotics treatment. The varying exceptions to the drug treatment program are identified in Penal Code section 1210.1, subdivision (b). The relevant alleged exception to the drug treatment program right in Penal Code section 1210.1, subdivision (b)(1) is as follows: "Subdivision (a) does not apply to either of the following: [¶] (1) Any defendant who previously has been *convicted* of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than a nonviolent drug possession offense . . . ." (Italics added.) The trial court reasoned that defendant had been "convicted" of a serious felony, robbery, within the meaning of Penal Code section 1192.7, subdivision (c).

■ This is an issue of statutory interpretation. In the case of a statute adopted by the Legislature or the voters, we apply the following standard of

---

[1]Penal Code section 1210.1, subdivision (a) states in its entirety: "(a) Notwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program. The court may also impose, as a condition of probation, participation in vocational training, family counseling, literacy training and/or community service. A court may not impose incarceration as an additional condition of probation. Aside from the limitations imposed in this subdivision, the trial court is not otherwise limited in the type of probation conditions it may impose. Probation shall be imposed by suspending the imposition of sentence. [¶] In addition to any fine assessed under other provisions of law, the trial judge may require any person convicted of a nonviolent drug possession offense who is reasonably able to do so to contribute to the cost of his or her own placement in a drug treatment program."

review: " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] ▊ Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) We must also consider 'the object to be achieved and the evil to be prevented by the legislation. [Citations.]' (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].) These guiding principles apply equally to the interpretation of voter initiatives. (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072 [2 Cal.Rptr.2d 160, 820 P.2d 262].)" (*Horwich* v. *Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].) ▊ In cases involving unambiguous statutory provisions, the Supreme Court has described how voter intent is to be ascertained as follows: "To determine intent, ' "The court turns first to the words themselves for the answer." ' (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)" (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) ▊ In this case, the unambiguous language chosen by the voters and the Legislature controls resolution of the issue before us.

For purposes of determining the drug rehabilitation program treatment right in Penal Code section 1210 et seq., a juvenile court adjudication, as occurred in this case is not a disqualifying factor. A juvenile delinquency adjudication and disposition in a prior robbery case does not result in the accused's having previously been "convicted" of a serious felony for purposes of Penal Code section 1210.1, subdivision (b)(1). Our decision in this regard is based upon the explicit language used by the voters in Penal Code section 1210.1, subdivision (b)(1). In order for a defendant to be excluded from drug treatment, Penal Code section 1210.1, subdivision (b)(1) requires the defendant in a nonviolent drug case to previously have been "convicted"

of a serious or violent felony. Welfare and Institutions Code section 203 explicitly states, "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." As the parties agree, the expansive scope of the language in Welfare and Institutions Code section 203, which prevents a delinquency wardship order from being considered a "conviction of a crime for any purpose," by its very terms includes defendant's March 12, 1993, wardship order based upon his commission of a robbery. This construction is entirely consistent with other decisions applying Welfare and Institutions Code section 203 under varying circumstances. (*People v. West* (1984) 154 Cal.App.3d 100, 108-110 [201 Cal.Rptr. 63] [juvenile court adjudication cannot be a prior serious felony conviction under Pen. Code, § 667, subd. (a)]; *In re Anthony R.* (1984) 154 Cal.App.3d 772, 775-776 [201 Cal.Rptr. 299] [Pen. Code, § 666 felony enhancement for prior theft-related convictions does not apply to juvenile court adjudications]; *In re Ricky B.* (1978) 82 Cal.App.3d 106, 114, fn. 2 [146 Cal.Rptr. 828] [juvenile court adjudication is not a prior "conviction" for purposes of Evid. Code, § 788 impeachment]; see *In re Michael S.* (1983) 141 Cal.App.3d 814, 817 [190 Cal.Rptr. 585] ["a minor ward['s] . . . conduct could not correctly be classified as a 'felony'"].) Because the express direction chosen by the voters, that which requires the accused to have previously been "convicted," and the explicit language in Welfare and Institutions Code 203 which prohibits a juvenile court disposition from being deemed to be a conviction, there is no need for reference to extrinsic materials. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 921 [50 Cal.Rptr.2d 309, 911 P.2d 496]; *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

No doubt, other criminal statutes do permit the use of prior juvenile court adjudications to enhance adult sentences. For example, a juvenile court delinquency adjudication can be used to enhance sentences pursuant to Penal Code sections 667, subdivision (d)(3) and 1170.12, subdivision (b)(3).[2] But no similar language appears in Penal Code section 1210.1, subdivision

---

[2] Penal Code section 667, subdivision (d)(3) states in relevant part: "(d) Notwithstanding any other law and for the purposes of subdivisions (b) to (i), inclusive, a prior conviction of a felony shall be defined as: . . . [¶] (3) A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if: [¶] (A) The juvenile was 16 years of age or older at the time he or she committed the prior offense. [¶] (B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) or (2) as a felony. [¶] (C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law. [¶] (D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." Penal Code section 1170.12, subdivision (b)(3), with minor

(b)(1). Rather, the only language utilized in Penal Code section 1210.1, subdivision (b)(1) refers to an accused who has been previously "convicted" of a violent or serious felony. Because defendant has not been convicted, he does not fall within the exception in Penal Code section 1210.1, subdivision (b). He is therefore eligible pursuant to Penal Code section 1210, subdivision (a) for placement in the drug treatment program. Defendant's extensive record and problematic chances of completing a drug treatment are irrelevant—the language chosen by the voters and the Legislature is controlling.

If defendant fails to comply with the terms of his drug treatment program or other probation conditions to the degree he may be sentenced to prison as described in Penal Code section 1210.1, subdivision (e), then he will be subject to the enhanced terms in Penal Code sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1). In other words, his prior juvenile robbery adjudication does not bar defendant from participating in the Penal Code section 1210 et seq. drug treatment program. But if defendant is ultimately sentenced to prison, his robbery prior adjudication, unless it is stricken pursuant to Penal Code section 1385, subdivision (a), will subject him to the enhanced penalties in Penal Code sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1).

Defendant has requested that we immediately issue the remittitur. However, in the absence of stipulation entered into between defendant and the Attorney General, we may not order the immediate issuance of the remittitur. (Cal. Rules of Court, rule 25(b).)[3] Defendant is free to seek his release on bail or his own recognizance.

The order denying defendant's request for placement in a drug treatment program is reversed.

Armstrong, J., and Mosk, J., concurred.

.

---

inconsequential stylistic changes, sets forth the identical rule articulated in Penal Code section 667, subdivision (d)(3).

[3]Rule 25(b) of the California Rules of Court states: "[Issuance forthwith] For good cause shown, or on stipulation of the parties, the Supreme Court may direct the immediate issuance of a remittitur. The Court of Appeal may direct the immediate issuance of a remittitur on stipulation of the parties."