[No. E033907. Fourth Dist., Div. Two. Nov. 15, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
LEVELL DOVE III, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III.D and III.E.

**COUNSEL**

Linda Casey Mackey, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale and Lise Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—During a traffic stop, defendant Levell Dove III was found to have about an ounce of rock cocaine in his pocket. The jury found him not guilty of possession of cocaine base for sale (Health & Saf. Code, § 11351.5) but guilty of the lesser included offense of simple possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)). It also found him guilty of transportation of cocaine base. (Health & Saf. Code, § 11352, subd. (a).)

Although the jury had refused to find that the cocaine base was for sale, the trial court refused to find that it was for personal use. On that ground, it ruled that defendant was ineligible for probation and treatment under Proposition 36. It sentenced him instead to eight years in prison (the midterm for transportation, doubled because he admitted a "strike" prior).

In the published portion of this opinion, we will hold that a factual finding that a defendant did not possess or transport a controlled substance for personal use, for purposes of Proposition 36 sentencing, can be made by the trial court under a preponderance of the evidence standard; neither *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] nor *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] requires that it be made by a jury beyond a reasonable doubt.

In the unpublished portion of this opinion, we find no other error; hence, we will affirm.

I

FACTUAL BACKGROUND

Officer Richard Morris and his partner, Officer Bryan Dailey, stopped a car because it was speeding and because it made an illegal left turn. Defendant was the driver; he had a female passenger. Defendant did not appear to be under the influence of drugs.

With defendant's consent, Officer Morris conducted a patdown search. In defendant's right front pants pocket, he found two large rocks and a number of smaller pieces of what appeared to be cocaine, along with $115.45 in cash. Subsequent testing confirmed that the large rocks were cocaine base, cut with novocaine, weighing a total of 27.78 grams.

Defendant did not have any scales, ledgers, "pay-owe sheets," baggies, cell phones, or pagers.

When the passenger was searched, she was found to have approximately $600 in cash, mostly in $20 bills, along with food stamps and welfare documents.

In Officer Morris's expert opinion, the "large amount" of drugs found on defendant indicated that defendant possessed them for sale. Rock cocaine is typically sold in small amounts, for $10 or $20. The average addict would use one $5 or $10 rock a day; a daily user could make one gram last a week to two weeks.

Officer Morris testified that, unlike a methamphetamine dealer, a rock cocaine dealer did not need a scale because he or she could just break off a piece of the appropriate size. He further testified that "sometimes" drug dealers work in teams, with one person carrying the drugs and another person carrying the money.

Officer Dailey, also testifying as an expert, agreed that defendant possessed the drugs for sale. His opinion was based on the amount of the cocaine and on the amount and the denominations of money found. He testified that rock cocaine is typically sold in $10 or $20 pieces. Twenty dollars would buy about a quarter of a gram. An ounce of rock cocaine, if broken up and sold at "street level," would be worth about $3,000. He also testified that it is "very common" for a drug dealer to have a lot of $20 bills.

Officer Dailey testified that rock cocaine dealers typically do not have either scales or pay-owe sheets. They can just "eyeball" a rock to determine its weight and value. He admitted that the possession of a cell phone "does add to a case. . . . However, there are other means to [communicate]."

Deputy Kevin Dorrough testified as an expert on drug sales. In his opinion, "based upon just the quantity alone, in addition to the money," defendant was in possession for sale. The amount of cocaine found "far exceeds what somebody would possess just for personal use." Rock cocaine is typically sold in $20 amounts, weighing about a tenth of a gram. A typical user would not have enough money at any one time to buy more than one or two $20 rocks. Deputy Dorrough estimated that an ounce of rock cocaine would last the heaviest user from 10 days to a month. He testified: "Maybe someone like Robert Downey, Jr., . . . could . . . possess an ounce of rock cocaine." But "[i]n my nine years as a deputy, . . . I've never met a user . . . who could afford an ounce of rock cocaine . . . ." He admitted, however, that he did not know what defendant's financial status was.

According to Deputy Dorrough, even a street-level dealer would have no more than ten to fifteen $20 rocks at a time. The amount of rock cocaine defendant had was "ready for sale to the street[-]level dealer." It might have cost him $1,000 to $1,500 to buy, but it could be broken up and sold on the street for about $3,000.

The $115 found on defendant supported Deputy Dorrough's opinion, but, he testified, "[i]f he didn't have the money, it wouldn't change my opinion."

Deputy Dorrough testified that scales are typically found with methamphetamine, powder cocaine, and marijuana, but not with rock cocaine, because a dealer could just break off a rock for sale. "You don't find pay-owe sheets . . .

because if you don't have the $20, you're not getting the rock." Finally, you would not necessarily find packaging, because a rock could be carried in the hand, mouth, or rectum.

## II

## THE DENIAL OF DEFENDANTS' MOTION TO DISCHARGE HIS RETAINED COUNSEL*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

## PROPOSITION 36 SENTENCING

Defendant raises several contentions concerning the trial court's refusal to sentence him pursuant to Proposition 36.

### A. *Statutory Background.*

The Substance Abuse and Crime Prevention Act of 2000, commonly known as (and hereafter referred to as) Proposition 36, is codified at Penal Code sections 1210, 1210.1, and 3063.1, and division 10.8 (§ 11999.4 et seq.) of the Health and Safety Code. It " 'dramatically changed the penal consequences for those convicted of nonviolent drug possession offenses.' [Citation.]" (*People v. Guzman* (2003) 109 Cal.App.4th 341, 346 [134 Cal.Rptr.2d 727], quoting *People v. Letteer* (2002) 103 Cal.App.4th 1308, 1322, fn. 8 [127 Cal.Rptr.2d 723].)

"Nonviolent drug possession offense," as defined in Proposition 36, includes "the unlawful personal use, possession for personal use, or transportation for personal use" of specified controlled substances, including cocaine base. (Pen. Code, § 1210, subd. (a); see also Health & Saf. Code, § 11054, subd. (f)(1).) It excludes "the possession for sale" of any controlled substance. (Pen. Code, § 1210, subd. (a).)

Proposition 36 then provides: "Notwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive probation." (Pen. Code, § 1210.1, subd. (a).) One of the specified exceptions applies when the "defendant . . . previously has been convicted of one or more serious or violent felonies" within the preceding five years. (Pen. Code, § 1210.1, subd. (b)(1).) Another exception applies when the "defendant . . . , in addition to one or more nonviolent drug possession offenses, has been convicted in the same proceeding of . . . any felony." (Pen. Code, § 1210.1, subd. (b)(2).)

---

*See footnote, *ante*, page 1.

B. *Additional Factual and Procedural Background.*

Defendant filed a written motion for sentencing pursuant to Proposition 36. First, he noted that his strike prior was a juvenile adjudication and therefore did not disqualify him from Proposition 36 sentencing. (See *People v. Westbrook* (2002) 100 Cal.App.4th 378, 383–385 [122 Cal.Rptr.2d 514].) Second, he noted that, on count 1, the jury had acquitted him of possession for sale but found him guilty of the lesser included offense of simple possession. He argued that the jury must have found that the possession charged in count 1—and, moreover, the transportation, at the same time of the same cocaine base, charged in count 2—were for personal use and not for sale.

At the sentencing hearing, defense counsel noted again that defendant's strike prior did not disqualify him from sentencing under Proposition 36. The trial court responded:

"THE COURT: But this is all premised on the fact that I would be willing to make a finding that the transportation was for personal use. And I am not willing to do that.

"[DEFENSE COUNSEL]: That was my other argument, that based on the fact that the jury found my client not guilty of possession for sales, therefore the—

"THE COURT: But I heard the evidence.

"[DEFENSE COUNSEL]:—inference would be that he was guilty of possession for personal use.

"THE COURT: But I heard the evidence.

"[DEFENSE COUNSEL]: Okay.

"THE COURT: So I'm not only not inclined, but I am not going to make that finding so he can get probation. I don't think he deserves probation, is the bottom line."

C. Apprendi/Blakely *Error.*

Defendant contends that, under the federal Constitution, the finding, for purposes of Proposition 36, that the possession and transportation of the drugs were not for personal use had to be made both by a jury and beyond a reasonable doubt.

In his opening brief, defendant relied on *Apprendi v. New Jersey, supra,* 530 U.S. 466. *Apprendi* held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

Three California cases, however, have held that a trial court's finding that a defendant is ineligible for Proposition 36 sentencing does not increase the penalty for a crime beyond the statutory maximum and therefore does not violate *Apprendi.*

First, in *People v. Barasa* (2002) 103 Cal.App.4th 287 [126 Cal.Rptr.2d 628], Division One of this appellate district held that *Apprendi* does not apply to a personal use finding under Penal Code section 1210.1: "In this case, the issue concerns a sentencing provision which lightens, rather than increases, punishment for crime. Because Penal Code section 1210.1 effects a sentencing *reduction*, rather than an *increase* in the 'prescribed statutory maximum' sentence, the analysis of a related sentencing provision which also provides for a possible mitigation of punishment, rather than an increase in the prescribed statutory maximum punishment, is applicable." (*Barasa,* at p. 294.) The court also analogized to cases holding that *Apprendi* does not apply to factual findings under Penal Code section 654. (*Barasa,* at p. 295, citing *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021–1022 [109 Cal.Rptr.2d 464].)

Thereafter, in *People v. Glasper* (2003) 113 Cal.App.4th 1104 [7 Cal.Rptr.3d 4], the Sixth District likewise held that *Apprendi* does not apply to a personal use finding under Penal Code section 1210.1: "We agree with the *Barasa* court that *Apprendi* does not apply here because 'the issue concerns a sentencing provision which lightens, rather than increases, punishment for crime. Because Penal Code section 1210.1 effects a sentencing *reduction,* rather than an *increase* in the "prescribed statutory maximum" sentence, the analysis of a related sentencing provision which also provides for a possible mitigation of punishment, rather than an increase in the prescribed statutory maximum punishment, is applicable.' [Citation.]" (*Glasper,* at p. 1115, quoting *People v. Barasa, supra,* 103 Cal.App.4th at p. 294.)

Curiously, *Glasper* did not cite a significant intervening case, *In re Varnell* (2003) 30 Cal.4th 1132 [135 Cal.Rptr.2d 619, 70 P.3d 1037]. Even more curiously, none of the parties here have cited it, either. In *Varnell,* the main issue was whether a trial court has the power under Penal Code section 1385 to strike a prior conviction so as to make the defendant eligible for Proposition 36 sentencing. (*Varnell,* at pp. 1134–1135.) Our Supreme Court held it does not.

It reasoned, in part, that Penal Code section 1385 allows the trial court to strike only charges and allegations, and a prior conviction, when used for this purpose, does not have to be pleaded. (*In re Varnell*, *supra*, 30 Cal.4th at pp. 1137, 1139.) The defendant, however, argued that such a prior conviction must be pleaded and proved as a matter of due process. (*Id.* at p. 1141.) The Supreme Court disagreed; in the process, it specifically distinguished *Apprendi*: ". . . *Apprendi* . . . holds that any fact that increases the penalty for a crime beyond the statutory maximum prescribed for that crime must be submitted to a jury and proved beyond a reasonable doubt. [Citations.] Here, since the statutory maximum for petitioner's crime is three years in prison [citation], no finding by the trial court *increased* the penalty beyond the statutory maximum. [Citation.] Moreover, nothing in [Penal Code] section 1210.1 could have created an enhancement to petitioner's sentence since, when it applies, section 1210.1 *reduces* the potential punishment. [Citations.]" (*Varnell*, at pp. 1141–1142.) The Supreme Court cited *Barasa* with approval. (*Varnell*, at p. 1142.)

Defendant urges us to reject *Barasa* and *Glasper*. Even if we were inclined to do so—which we are not—we would be bound to follow *Varnell*. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321].)

Defendant also argues that *Barasa* and *Glasper* (and, implicitly, *Varnell*) are no longer good law in light of *Blakely v. Washington*, *supra*, 542 U.S. 296 [124 S.Ct. 2531]. *Blakely* held "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (*Id.* at p. 303 [124 S.Ct. at p. 2537].) Thus, *Blakely*, like *Apprendi* before it, draws a bright line between a finding that increases a sentence and a finding that reduces a sentence. We therefore continue to be bound by our Supreme Court's holding in *Varnell* that Proposition 36 reduces the sentence that would otherwise apply.

But even if we were to reexamine the question independently, we would come to the same conclusion.

In *Blakely*, the defendant pleaded guilty to second degree kidnapping and admitted using a firearm. (*Blakely v. Washington*, *supra*, 542 U.S. at pp. 298–299 [124 S.Ct. at pp. 2534–2535].) Under Washington's sentencing scheme, the "standard range" for such an offense was 49 to 53 months. (*Id.* at p. 2535.) However, the trial court could impose an exceptional sentence,

above the standard range, for "substantial and compelling reasons," including but not limited to specified aggravating factors. (*Ibid.*, quoting Wash. Rev. Code. Ann. § 9.94A.120(2).) If it did impose an exceptional sentence, it had to set forth findings of fact and conclusions of law in support. (*Blakely,* at p. 2535.) Based on a finding that the defendant had acted with "deliberate cruelty," the trial court imposed a sentence of 90 months. (*Ibid.*, quoting Wash. Rev. Code. Ann. § 9.94A.390(2)(h)(iii).)

The Supreme Court held that this finding increased the sentence above the statutory maximum. (*Blakely v. Washington, supra,* 542 U.S. at p. 304 [124 S.Ct. at pp. 2537–2538].) The state, noting that even an exceptional sentence could not exceed 10 years, argued that 10 years was the true statutory maximum. (*Id.* at p. 2537.) The Supreme Court disagreed: "The judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea. . . . Had the judge imposed the 90-month sentence solely on the basis of the plea, he would have been reversed. [Citation.]" (*Id.* at pp. 2537–2538.)

Here, "when a defendant is eligible for Proposition 36 treatment, it is mandatory unless he is disqualified by other statutory factors . . . . [Citation.] Placement of eligible defendants in Proposition 36 programs is not a discretionary sentencing choice made by the trial judge and is not subject to the waiver doctrine. [Citation.]" (*People v. Esparza* (2003) 107 Cal.App.4th 691, 699 [132 Cal.Rptr.2d 377].) However, when a defendant is ineligible, a prison sentence is equally mandatory. Sometimes, as in this case, a jury's verdict will not necessarily determine whether the defendant is eligible or ineligible. This poses some difficulty in discerning which is the statutory maximum.

■ But an additional holding in *Barasa* is that the defendant has the burden of proving that the possession or transportation was for personal use. (*People v. Barasa, supra,* 103 Cal.App.4th at pp. 295–296.) Also, unlike the findings underlying an exceptional sentence in *Blakely,* the trial court's finding that the possession or transportation was not for personal use need not be stated on the record. If the trial court imposes a prison sentence, we will imply the necessary finding. Moreover, we will sustain that implied finding as long as it is supported by substantial evidence. (Cf. *People v. Carl B.* (1979) 24 Cal.3d 212, 218 [155 Cal.Rptr. 189, 594 P.2d 14] [trial court's implied finding that defendant is not amenable to CYA is subject to substantial evidence review]; *People v. Blake* (1998) 68 Cal.App.4th 509, 512 [80 Cal.Rptr.2d 308] [trial court's implied finding that Pen. Code, § 654 does not apply will be upheld on appeal if supported by substantial evidence].) Thus, unless the evidence shows personal use as a matter of law, a prison sentence is not subject to reversal merely because the trial court failed to make an

express finding of personal use. And whether the evidence shows personal use as a matter of law is, tautologically, a question of law, not a finding of fact.

Accordingly, the trial court could have imposed a prison sentence based on the fact, as found by the jury, that defendant transported cocaine base. Unlike an exceptional sentence in *Blakely*, such a prison sentence would not be subject to reversal merely because the trial court failed to articulate some additional finding. In one sense, an additional finding would be necessary; but we would presume it to have been made. Moreover, if defendant failed to meet his burden of proof, it would be made automatically. Thus, it most nearly resembles a finding, under the Washington scheme, that there are *no* substantial and compelling reasons for an exceptional sentence.

We also consider it significant that Proposition 36 was intended, in part, "to *divert* from incarceration into community-based substance abuse treatment programs nonviolent defendants . . . charged with simple drug possession or drug use offenses . . . ." (Prop. 36, § 3, italics added.) Thus, in enacting Proposition 36, the electorate understood incarceration to be the preexisting standard penalty; it intended probation and treatment to reduce the penalty that would otherwise apply.

■ We conclude that neither *Apprendi* nor *Blakely* prohibited the trial court from deciding, based on the preponderance of the evidence, whether defendant's possession or transportation was for personal use for purposes of Proposition 36.

Finally, the acquittal on the charge of possession for sale did not bind the trial court. The acquittal simply meant the jury was not convinced beyond a reasonable doubt that the possession was for sale. Precisely because *Apprendi* and *Blakely* did not apply, the trial court was free to redetermine the personal use issue based on the preponderance of the evidence. (*U.S. v. Watts* (1997) 519 U.S. 148, 157 [136 L.Ed.2d 554, 117 S.Ct. 633] ["a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"]; *People v. Lent* (1975) 15 Cal.3d 481, 486–487 [124 Cal.Rptr. 905, 541 P.2d 545]; *People v. Lewis* (1991) 229 Cal.App.3d 259, 264 [280 Cal.Rptr. 128]; *People v. Levitt* (1984) 156 Cal.App.3d 500, 519, fn. 5 [203 Cal.Rptr. 276]; contra, *People v. Takencareof* (1981) 119 Cal.App.3d 492, 497–500 [174 Cal.Rptr. 112].)

D.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1.

## IV

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 2, 2005.