Filed 3/3/22  P. v. Ramirez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE TRINIDAD RAMIREZ,<br><br>    Defendant and Appellant. | B309519, B311700<br><br>(Los Angeles County<br>Super. Ct. No. NA093863) |

APPEAL from orders of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed in part; reversed in part and remanded.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Trinidad Ramirez (defendant) appeals from both the denial of his petition filed pursuant to Penal Code section 1170.95 (B309519) and from the trial court's order declining to exercise its discretion under section 12022.53, subdivision (h) (B311700).[1]  Finding that the trial court erred by concluding defendant had not made a prima facie showing of eligibility under section 1170.95, we reverse and remand that order with directions.  Finding no abuse of discretion in its ruling under section 12022.53, subdivision (h), we affirm that order.

## BACKGROUND

Defendant was convicted of first degree murder in violation of section 187, subdivision (a), with true findings that the crime was gang related (§ 186.22, subd. (b)(1)(C)) and that a principal (codefendant John Ramirez) personally and intentionally discharged a firearm causing death to the victim (§ 12022.53, subds. (d) & (e)(1)).[2]  Defendant was sentenced to 25 years to life in prison for murder and a consecutive firearm enhancement of 25 years to life.  The court stayed the remaining firearm enhancements.  Defendant appealed, and we affirmed the judgment in *People v. Ramirez* (Nov. 9, 2018, B280623) (nonpub. opn.) (the appellate opinion).

The evidence summarized in the appellate opinion shows that shortly after midnight on April 20, 2012, defendant, his

---

[1]    All further statutory references are to the Penal Code, unless otherwise indicated.

[2]    We will refer to defendant's brother John Ramirez and his father Miguel Ramirez by their first names, to avoid confusion.

father Miguel and others were drinking at a bar they all frequented. Defendant argued with the victim, Martin Contreras, mentioning the Westside Longo gang several times and telling Contreras and his companions that they were in his neighborhood and they should respect that. When Contreras and his three friends (Julio V., Orlando M., and Christian L.) left the bar, defendant followed them out and began to fight with Contreras. Miguel came outside and saw defendant and Contreras struggling on the ground. Miguel hit or kicked Contreras, who then hit Miguel, causing him to fall to the ground and lose consciousness. A security guard dispersed the group by spraying the air around them with pepper spray.

Contreras and his friends left and met up a short time later in front of Contreras's house just before defendant arrived and parked his white truck behind the friends' car. Defendant got out of the truck holding a steel pipe about the size of a baseball bat. He told Julio not to move and said such things as, "You mother fuckers, you're going to pay; this is not going to end like this." Defendant's brother John arrived in a black Dodge Ram pickup truck, which he parked behind defendant's truck. Orlando, who later identified John as "Johnny," ran off when he saw John emerge from his truck. Orlando heard a gunshot when he was about 40 feet away from the scene. Julio remained in the driver's seat of his car while being threatened by defendant when he also heard a gunshot from close behind him. Julio could no longer see Contreras and drove away.

Erika, the mother of Contreras's children, was inside the house when she woke up at around 1:16 a.m. to the sounds of people arguing and a gunshot. When Contreras came in bleeding from his waist, Erika called 911 and was directed to ask

3

Contreras who had shot him. Erika told the 911 operator that he named "Johnny." Later, as he lay wounded on the couch, Contreras told a police officer that "Johnny Ramirez," had shot him and left in a black Dodge Ram pickup truck. Erika did not know John but knew defendant. Defendant's cell phone records for the night of the shooting showed calls to John's phone at 12:56 a.m., 12:57 a.m., 12:58 a.m., and 1:14 a.m., and one call from John at 1:01 a.m., all answered. The location of the cell tower used for the calls was consistent with both phones being at the scene of the shooting at the time of the shooting.

When defendant and John's cousin told John later that afternoon that Contreras had been so gravely injured that he was going to die, John replied that the shot was not enough for him to die. Contreras died about 20 hours after the shooting. An autopsy determined that a large caliber bullet entered Contreras's body from behind, which was consistent with an attempt by Contreras to turn away upon seeing a gun. The fatal bullet damaged an artery and two veins.

Sometime after the night of the shooting, Julio, Christian, and another friend were parked at a liquor store when defendant drove up, blocked their car, and told them that what had happened to Contreras was nothing compared to what would happen to them if they said anything. John then arrived in another car, said that this was his "hood," to remain quiet about what had happened, and all would be fine.

Defendant was arrested and placed in a cell with an informant and their conversations were recorded. Among other things, defendant told the informant that his brother was a "rider," and that defendant had telephoned his brother "to have this fool hit" and to tell him that "this fool needs to go down" and

4

"be gone." Defendant indicated that his brother was the shooter, but then said it was someone else. Defendant said that the gun used was a revolver, which had been disposed of by his brother. The gun was never found.

The prosecution gang expert Detective Chris Zamora testified in response to a hypothetical question mirroring the facts in evidence that in his opinion the hypothetical crime was committed for the benefit of and in association with the Westside Longo criminal street gang. Detective Zamora was familiar with John and defendant and was of the opinion they were both members of the Westside Longo gang. He testified that "rider" meant an active gang member who would put in work for the gang. The defense presented the testimony of Martin Flores, a gang expert who opined that rather than showing a gang-related crime, the facts indicated a family dispute and a shooting to benefit the family name, not a gang. He also noted that it was common for jail inmates to lie or exaggerate the reasons for their arrest and incarceration, but he did not discern bragging in defendant's conversations. Flores also testified that "rider" can have many meanings, including the more benign meaning of "buddy."

In June 2019, defendant filed a petition for resentencing pursuant to section 1170.95. Defendant was represented by private counsel. After considering argument and briefs from defendant's counsel and the prosecution, the trial court took the matter under submission and denied the petition on November 20, 2020, without issuing an order to show cause.

In *People v. Ramirez*, *supra*, B280623, we affirmed defendant's judgment of conviction but remanded the matter to give the superior court the opportunity to exercise its discretion

5

under 12022.53, subdivision (h).  On remand, after hearing the argument of counsel, the trial court exercised its discretion on March 24, 2021, to reimpose the firearm enhancement.

Defendant filed timely notices of appeal from both orders, which we have consolidated for appeal.

## DISCUSSION
### I.    Section 1170.95 petition for resentencing

Defendant contends that the trial court erred in finding that he had not made a prima facie showing under section 1170.95 and in denying his petition.  Defendant argues that the court impliedly found that only one theory of murder liability was presented by the jury instructions and that the court erroneously applied a substantial evidence standard to find that the jury could have convicted him on a still-valid murder theory.

Effective January 1, 2019, the Legislature amended the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  This provision "bars a conviction for first or second degree murder under a natural and probable consequences theory."  (*People v. Gentile* (2020) 10 Cal.5th 830, 846 (*Gentile*).)  The Legislature also added section 1170.95, which provides a procedure for convicted murderers to retroactively seek relief if they could not be convicted under sections 188 and 189 as amended effective January 1, 2019.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

6

As relevant here, former section 1170.95 set forth three conditions to eligibility for resentencing:[3] (1) the petitioner was charged with murder "under . . . the natural and probable consequences doctrine"; (2) "petitioner was convicted of first . . . degree murder . . ."; and (3) "petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, former subd. (a).) When a defendant files a petition alleging the three conditions for relief the trial court must appoint counsel if requested, entertain briefing and then conduct a prima facie analysis before determining a need for an order to show cause hearing. (§ 1170.95, subd. (c); *Lewis, supra*, 11 Cal.5th at pp. 957, 962.)

Here the trial court received briefs from both sides, held a hearing and heard the argument of counsel. The documents considered by the trial court included jury instructions, "available transcripts" and the appellate opinion.[4] The court found that the jury was instructed with regard to aiding and abetting and to first degree murder. The court summarized the evidence which it found relevant, construed defendant's jailhouse statement to the informant that he telephoned his brother "to have this fool hit," to

---

[3]    As amended effective January 1, 2022, section 1170.95, subdivision (a)(2) now extends to those convicted of not only murder, but also attempted murder, or manslaughter after trial or accepting a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

[4]    At defendant's request, we take judicial notice of the appellate record in *People v. Ramirez, supra*, B280623. Although we did not find the printed instructions in the record, they were transcribed.

tell him that "this fool needs to go down" and to "be gone" as an admission that he ordered the killing, and found that defendant "clearly acted with the intent to kill." The trial court concluded that defendant had failed to "demonstrate[] that the jury could not have convicted him of murder under the current law."

Defendant contends that the court erred by applying a substantial evidence standard and engaging in factfinding. We agree that the trial court erred by engaging in factfinding or weighing evidence at the prima facie stage of the proceedings. (See *Lewis, supra*, 11 Cal.5th at p. 972.)

The trial court may not engage in such factfinding, weighing of the evidence, or exercise its discretion in determining whether the defendant has made a prima facie showing at the prima facie stage. However the court may consider the record of conviction, including the court's own documents and appellate opinion, in order to distinguish petitions with *potential* merit from those that are clearly lacking merit. (*Lewis, supra*, 11 Cal.5th at pp. 970-972.) The court must accept the petitioner's factual allegations as true, make a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved; and only where the record of conviction contains established facts showing that the petitioner is ineligible for resentencing *as a matter of law* may the court find that no prima facie showing has been made and deny the petition without issuing an order to show cause. (*Id*. at p. 971.) The "'prima facie bar was intentionally and correctly set very low.'" (*Id*. at p. 972.)

Finding a fact is established as a matter of law at the prima facie stage means that it is *conclusively* established. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) Thus, error in

8

denying a petition at prima facie stage is harmless if the record of conviction conclusively demonstrates ineligibility for relief. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 675.)[5]

Here the record of conviction reflects the three conditions for eligibility stated in section 1170.95, former subdivision (a): (1) defendant was convicted of murder; (2) one of the prosecution's theories of murder liability was the natural and probable consequences doctrine; and (3) the jury was instructed regarding that now-invalid theory of murder under the natural and probable consequences doctrine. The jury was also instructed with regard to conspiracy to commit an uncharged offense other than murder. It thus cannot be said that the jury was instructed only on still-valid theories of liability.

Defendant notes that there was no express finding that would show defendant's ineligibility as a matter of law, such as a true finding as to premeditation expressly stated on the verdict. He also argues that there was no clear instruction requiring a finding that he, as distinguished from his codefendant, personally premeditated the murder, and that considering ambiguities in the instructions as well as the sequence in which they were given, a reasonable juror could have interpreted the instructions as a

---

[5] For example, a petitioner is ineligible for resentencing as a matter of law where the record of conviction shows that his conviction was for a crime not listed in subdivision (a) of section 1170.95 as eligible for resentencing (*People v. Aleo* (2021) 64 Cal.App.5th 865, 871), where no jury instructions were given at his trial regarding felony murder or the natural and probable consequences doctrine (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1058-1059), or where the jury found true a felony-murder special circumstance under section 190.2. (*People v. Nunez* (2020) 57 Cal.App.5th 78, 90-91, review granted Jan. 13, 2021, S265918.)

9

whole as allowing first degree murder under the natural and probable consequences doctrine, or a conspiracy theory based upon his codefendant's premeditation.

Respondent argues that despite erroneous factfinding, remand is unnecessary because the jury instructions and verdict show that defendant is ineligible for resentencing under section 1170.95 as a matter of law in that the jury returned a verdict of first degree murder, a still-valid theory of murder under section 188, subdivision (a)(1). (See *Gentile, supra*, 10 Cal.5th at p. 848.) Claiming that the only theory of liability for *first* degree murder presented was that defendant personally premeditated the murder, and that the instruction regarding the natural and probable consequences theory made clear that a murder conviction based on that theory must be for second degree murder, respondent argues that "[a]ny reasonable juror would have understood that the natural and probable consequences doctrine could only support a conviction for second degree murder, and that a finding of intent to kill was necessary for a first degree murder conviction." Respondent concludes that the first degree murder verdict meant that the jury necessarily found that defendant personally premeditated an intent to kill. Defendant's jury was instructed as to several theories of homicide and aiding and abetting: premeditated murder, natural and probable consequences, conspiracy, direct aiding and abetting and voluntary manslaughter. The court read CALCRIM Nos. 520 and 521, defining murder, express malice and implied malice, instructing murder is "murder of the second degree unless the

10

People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM number 521 . . . ."[6]

The court also instructed the jury that, if the People proved murder but did not prove premeditation beyond a reasonable doubt, it was second degree murder. The court then defined aiding and abetting, explaining that the aider and abettor must know of the perpetrator's unlawful purpose and specifically intend to and does aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime.

Instructions regarding the natural and probable consequences doctrine were given. Under this (now invalid) theory an accomplice was guilty not only of the "target offense" (the offense directly aided or abetted) but also of any "nontarget offense" (any other offense committed by the direct perpetrator that was the natural and probable consequence of the target offense). (*Gentile, supra*, 10 Cal.5th at p. 843.) "A nontarget offense is the natural and probable consequence of a target offense 'if, judged objectively, the [nontarget] offense was reasonably foreseeable.'" (*Id.* at p. 843.) "'[F]or example, if a person aids and abets only an intended assault, but a murder

---

[6] The court read CALCRIM No. 521 in relevant part as follows:

> "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the consideration for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death."

11

results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.'" (*Id*. at p. 844.) The trial court read CALCRIM No. 403, explaining these elements of aiding and abetting under the natural and probable consequences doctrine, and told the jury that the target offense was assault, assault with a deadly weapon, or assault with a firearm.

However the court then added its own language, presumably with the intent of conforming the instruction to the holding in *People v. Chiu* (2014) 59 Cal.4th 155, 165, "that natural and probable consequences liability cannot extend to first degree premeditated murder because punishing someone for first degree premeditated murder when that person did not actually perpetrate or intend the killing is inconsistent with 'reasonable concepts of culpability.'" Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended section 188, to provide that "'[e]xcept as stated in subdivision (e) of . . . Section 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her *participation* in a crime.'" (*Gentile, supra*, 10 Cal.5th at p. 839, italics added.) The trial court did not instruct that malice could not be imputed based upon mere participation in a crime, and the court's added language comported with *Chiu* to the extent that the court instructed, "Murder committed under these circumstances is murder of the second degree." The court's second sentence then qualified that instruction, as follows: "You cannot find a defendant guilty of first degree murder based *solely* on a conclusion that the murder was a natural and probable consequence *of another crime*." (Italics added.) The trial court's

12

language arguably implies that the jury's conclusion that the murder was a natural and probable consequences of another crime, *along with other factors*, can lead to an aider and abettor's conviction of first degree murder.

The jury was also instructed with CALCRIM No. 416, defining conspiracy, and then No. 417,[7] explaining murder liability based upon an uncharged conspiracy. These instructions

---

[7] "A member of a conspiracy is criminally responsible for the crime he conspires to commit, no matter which member of the conspiracy commits the crime. [¶] A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan. Under this rule, a defendant who is a member of the conspiracy does not need to be present at the time of the act. [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence. [¶] A member of a conspiracy is not criminally responsible for the act of another member if that act does not further the common plan or is not a natural and probable consequence of the common plan. [¶] To prove that the defendant is guilty of the crime charged in count 1 under a conspiracy theory, the People must prove that: [¶] 1, the defendant conspired to commit one of the following crimes: assault, assault with a deadly weapon or assault with a firearm; [¶] 2, a member of the conspiracy committed murder to further the conspiracy; and [¶] and 3, murder was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit." (CALCRIM No. 417.)

13

did not include language specifically limiting murder liability to second degree murder.

Respondent argues that it must be presumed that the jurors followed the instruction that first degree murder required a finding that the defendant premeditated an intent to kill. However the jury here may have followed the instruction by finding that the actual perpetrator in the conspiracy to commit an assault premeditated an intent to kill. And because the trial court did not instruct that vicarious murder liability as a consequence of the conspiracy could not be first degree murder, the jury could have convicted defendant of first degree murder as a coconspirator without personally harboring an intent to kill.[8] The conspiracy instruction told the jury that the defendant could be liable for the act of another member committed in furtherance the common plan of assault, and in this case the act of the codefendant was found to be first degree murder.

Thus, the presumption that the jury followed the premeditation instruction, which applied to "the defendant," meaning defendant and codefendant, may demonstrate a probability that the jury found this defendant premeditated an intent to kill; however we cannot conclude that it conclusively shows such a finding as a matter of law. (Cf. *People v. Offley* (2020) 48 Cal.App.5th 588, 599 [where jury *could have* convicted the defendant of murder as a consequence of conspiracy without

---

[8] Indeed, the prosecutor apparently thought the jury did so. In the hearing on defendant's postjudgment motion to strike the firearm enhancement, the same prosecutor who tried the case argued that defendant was convicted of first degree murder as a participant in a conspiracy to kill the victim. (See discussion in part II, below.)

14

finding malice, it cannot be said he "'is ineligible for relief as a matter of law'"].)

We also must reject respondent's suggestion that our analysis amounts to relitigating a claim of instructional error or a "'do-over on factual disputes that have already been resolved.' (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.)" Whether a fact has been established "as a matter of law is, tautologically, a question of law, not a finding of fact." (*People v. Dove* (2004) 124 Cal.App.4th 1, 11.) Conversely where the basis for the jury's first degree verdict is not conclusively shown by the record, it does not refute the allegations of the petition as a matter of law (see *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 815), and the trial court's error cannot be deemed harmless (see *People v. Daniel*, *supra*, 57 Cal.App.5th at p. 675).

As the allegations of the petition were not refuted as a matter of law, defendant has made a prima facie showing of entitlement to relief requiring the issuance of an order to show cause. (*Lewis, supra*, 11 Cal.5th at p. 971; see § 1170.95, subd. (c).) We remand for that purpose.

## II. Firearm enhancement

Section 12022.53, subdivision (h) was amended effective January 1, 2018, to provide: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." At the hearing defense counsel argued that defendant was not the shooter, there was no evidence at trial of a conspiracy to shoot the victim, and no evidence that defendant

15

knew that his brother was going to shoot the victim or even that he was going to bring a gun or pull out a gun.

The prosecutor argued that defendant was convicted of first degree murder as a coconspirator in a conspiracy to kill the victim. He asserted that this was demonstrated by defendant's jailhouse conversations with an informant in which defendant said he called his brother to tell him to have "this fool hit," and to tell him that "this fool needs to go down" and "be gone." The prosecutor also pointed to the evidence that defendant had threatened others with a metal pipe just before his brother arrived on the scene.

The trial court denied the motion referring to its findings with regard to defendant's habeas corpus and section 1170.95 petitions.[9] The court cited the following trial evidence: "The evidence presented at trial, . . . through at least one witness, was that at one point petitioner went to his wife's pickup truck and received a steel pipe the size of a baseball bat, approaching Julio told him not to move and said, 'You mother-fucker, you are going to pay. This is not going to end like this.' . . . [¶] And then the co-defendant, John Ramirez, arrived . . . in a separate black truck and then shots rang out and Contreras was killed. [¶] The court finds that . . . as . . . previously ruled in the context of the habeas 1170.95 [*sic*] that the defendant did act with willful and reckless disregard for human life, that he shared criminal intent as evidenced by those statements to kill the victim. [¶] For this reason the court exercises its discretion to impose the P.C.

---

[9] Defendant's petition for writ of habeas corpus, also filed in June 2019 and denied by the trial court, sought relief from his sentence and conviction based upon a claim of ineffective assistance of counsel.

16

12022.53 enhancement as previously imposed by the sentencing judge of 25 to life."

After defendant filed a timely notice of appeal from the court's judgment, his appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, raising no issues. Defendant filed his own brief, asserting that the trial court abused its discretion in denying the motion. He argues that the trial court failed to consider factors in mitigation, such as his heat of passion defense; the involvement of alcohol; a criminal history with no prior felony convictions; the fact that he was not a gang member and too old to be an active gang member;[10] and the fact that the court stayed the firearm enhancement, which had been found true as to his codefendant, the actual shooter.

Defendant is mistaken regarding enhancements. He cites page 3 of our opinion in the appeal taken by codefendant John Ramirez. (*People v. Ramirez* (Oct. 4, 2017, B267429) [nonpub. opn.].) There, the summary of procedural facts indicate that John's sentence was enhanced by a term 25 years to life under section 12022.53, subdivision (d). *Additional* firearm enhancements that had been found true were stayed, as were additional firearm enhancements found true by defendant's jury.

Defendant argues that the trial court should have considered the evidence as a whole. It is unknown what parts of the trial record the court reviewed. The trial judge was not the judge who heard and denied the motion after reviewing "available transcripts."

---

[10]    Defendant was in his late 40's at the time his petition was denied. The probation department provided no records indicating gang involvement.

17

It is unknown what factors in mitigation the court relied on, if any, as only factors in aggravation were cited by the court. A sentencing court must consider "[c]ircumstances in mitigation, includ[ing] factors relating to the crime and factors relating to the defendant." (Cal. Rules of Court, rule 4.423.) However, California Rules of Court, rule 4.409 provides: "Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise." Thus, we do not presume that the court failed to consider mitigating factors, including those cited in defendant's supplemental brief.

With no error having been shown, we affirm the order reimposing the firearm enhancement.

## DISPOSITION

The order denying the section 1170.95 petition is reversed, and the matter is remanded to the superior court with directions to issue an order to show cause pursuant to section 1170.95, subdivision (c) and to proceed in the manner described in section 1170.95, subdivisions (d) through (g).

The order reimposing the firearm enhancement pursuant to section 12022.53, subdivision (d) is affirmed.

_____
CHAVEZ, J.

We concur:


_____          _____
LUI, P. J.                        HOFFSTADT, J.

18