[No. D052257. Fourth Dist., Div. One. Mar. 11, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CHAUNCY LEE HARRIS, JR., Defendant and Appellant.

## COUNSEL

Wilson Adam Schooley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HUFFMAN, J.**—A jury convicted Chauncy Lee Harris, Jr., of transportation of a controlled substance, cocaine base (Health & Saf. Code, § 11352, subd. (a); count 1) and possession of narcotics paraphernalia (Health & Saf. Code, § 11364; count 4). As to count 1, the jury specifically found true that the transportation was for personal use within the meaning of Penal Code[1] section 1210, subdivision (a).[2] After a bifurcated proceeding, the court found true that Harris had suffered seven prior prison terms (§ 667.5, subd. (b)) and that those included three previous drug sale/transportation convictions under Health and Safety Code section 11352 (Health & Saf. Code, § 11370.2, subd. (a)). The court sentenced Harris to a total prison term of 19 years.

On appeal, Harris essentially contends the trial court imposed an unauthorized sentence by sending him to prison instead of granting him mandatory probation under Proposition 36 based on the express jury finding that he transported the cocaine base for his personal use and that the imposition of a 19-year prison term in this case constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Under the unique facts of this case, we conclude that the trial court was required to grant Harris Proposition 36 probation and his other arguments are moot.[3] We therefore affirm Harris's convictions and reverse his sentence, remanding the matter to the trial court for resentencing under Proposition 36.

## FACTUAL BACKGROUND

### A. *The Evidence at Trial*

Around 2:00 a.m. on April 3, 2007, San Diego Police Officer Benjamin Shumaker stopped a white Chrysler near the 5600 block of El Cajon

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] After the jury was unable to reach verdicts on counts 2 and 3, respectively, for possession of cocaine base for purposes of sale (Health & Saf. Code, § 11351.5) and possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a)), the trial court declared a mistrial on those counts and dismissed them with prejudice in the interests of justice.

[3] Harris alternatively requested this court to revisit our Supreme Court's holding in *People v. Rogers* (1971) 5 Cal.3d 129, 134–137 [95 Cal.Rptr. 601, 486 P.2d 129], which determined that the crime of transportation does not require the defendant intend to sell or distribute a controlled substance, or personally possess the controlled substance and instead find that as a matter of law the Legislature intended the crime of transportation "to mean moving drugs for the purpose of facilitating sale" and find there was insufficient evidence in this case to show Harris's conduct constituted transportation to support his count 1 conviction. Based on such alternative assertion, Harris further asked this court to find that the trial court prejudicially erred in instructing the jury on the count 1 charge of transportation. Because of our determination in this case, we decline to address these alternative issues.

Boulevard in San Diego because the driver was wearing headphones over both ears, which is a violation of the Vehicle Code. After approaching the driver and noticing there were two other passengers in the car, Shumaker called for assistance.

When San Diego Police Officer Oscar Amado arrived about two minutes later, he approached the passenger side of the car while Shumaker again contacted the driver. As Amado did so, he saw the left backseat passenger tuck something into the seat near his right hip area and noted the front passenger, later identified as Harris, appeared nervous, moving his head and fingers around. Amado had the passengers step out of the car and sit on the curb while he briefly searched the car with the use of a flashlight.

In the rear area of the car, Amado found a baggie of marijuana and another one containing residue of a controlled substance between the seat cushions. In the front area, he found a black plastic digital scale on the bench seat to the left of where Harris had been sitting and a cigarette box partially under the seat where Harris's legs had been located. Opening the box, Amado found two plastic baggies along with some cigarettes. Inside one of the baggies, he found nine pieces of cocaine base, known on the street as "crack" or "rock" cocaine. The "rocks" were different sizes, consistent with a "$5 rock, a $10 rock and a $20 rock," and subsequent testing revealed they totaled 2.15 grams. The other baggie contained a usable amount of methamphetamine. Because it was easy to conceal, Amado believed that the scale found was similar to the type usually used by "street level" drug dealers to weigh drugs for sale.

Amado then searched Harris and found a rolled up paper bindle in his right pants pocket that contained about 0.07 grams of cocaine base and in his left rear pants pocket found a "Brillo" copper padding, which is often used as a filter for a crack cocaine pipe. Although Amado did not find any significant amount of money on Harris or any pay-and-owe sheets near him, Amado believed that Harris possessed the cocaine rocks found on his person and in the car near where he had been sitting for sale. Amado cited the backseat passenger for possession of marijuana.

Shumaker, who had questioned and searched the driver, cited and released him for wearing the headphones while driving, for driving with a suspended license, and for possession of less than one ounce of marijuana and a methamphetamine pipe.

At trial, both Shumaker and Amado testified to the above facts. Although Amado opined that street level sales do not always involve a significant amount of money and pay-and-owe sheets, on cross-examination he conceded there was "nothing to substantiate . . . to further what we had as evidence," that would make him think that Harris was selling drugs and there were "a thousand and one uses" for Brillo padding. Neither Amado nor Shumaker wore gloves during the searches, and none of the items found in the searches were checked for fingerprints. Shumaker never noticed any suspicious or furtive movements by the occupants of the car during the stop. Further, even though Amado did not notice anything about Harris that made him think he needed to investigate him for being under the influence of drugs, he acknowledged that Harris's nervous movements could have been a sign that he was under the influence.

San Diego Police Narcotics Unit Detective Jovanna Derrough testified at trial as an expert regarding the possession of cocaine base for sale and personal use. Derrough explained that a person in possession of cocaine base for personal use will typically exhibit symptoms such as burnt fingerprints and have items in their possession like a glass pipe or rod to push the drug into the pipe to smoke cocaine base. A person in possession of cocaine for street level sales generally has a large amount of cocaine base, different types of packaging, large amounts of money, and a scale to weigh the cocaine. Derrough noted that these factors would not be present in every case, depending on when a dealer was arrested. For example, a dealer would only have a large amount of money after several sales whereas if he were arrested with drugs before being able to sell, he or she would not have much money.

Derrough further explained that street level sales of cocaine base are typically packaged in Ziploc baggies and that it was common for a street level dealer to also use the drugs he or she sells. Derrough stated that cocaine base is typically sold in $10 and $20 amounts, with a $20 buyer getting about 0.2 grams, which is two to four doses or "hits"; 2.15 grams of cocaine base would yield about ten $20 "rocks" and be worth about $200 on the street; 0.07 grams of cocaine base would cost about $10, and would be for "personal usage."

Derrough opined that the 2.15 grams of cocaine base in this case was "probably in possession for sale" based on the fact that the number of cocaine base rocks in the one baggie corresponded with the usual size for sale, was of an amount greater than what a street level user might use in one day, a scale was found near Harris, and no cocaine pipe or rod to push the cocaine into the pipe was found on Harris. On cross-examination, Derrough conceded she had never seen a scale such as the one in this case that said "karats" instead of "grams," and that she would need more information to determine whether

Harris had exhibited any signs of personal cocaine base use than what was in the police reports. Although the reports revealed there were no pay-and-owe sheets, Derrough still opined that the cocaine base was possessed for sale because she had never come across a case where a person had $200 worth of cocaine base and it was not a sales case.

Even though Harris did not present any evidence in his defense, his counsel strenuously cross-examined the prosecution witnesses regarding possession of cocaine for sales versus personal use and argued in closing that Harris did not possess or know about the box containing the nine cocaine rocks and only possessed the amount of cocaine base found in his pocket for personal use.

During deliberations, after the jury began anew their deliberations due to a juror being excused for personal health reasons, they sent jury note No. 4 to the court, which stated "[w]e came to agreement on count 1 of a Verdict but we were not able to come to agreement on whether the transportation was or was not for personal use."

In response, the court, with agreement of counsel, reinstructed the jury on reasonable doubt (CALCRIM No. 220), the crime of transportation (CALCRIM No. 2300), on direct and circumstantial evidence (CALCRIM Nos. 223 & 224), on intent and/or mental state (CALCRIM No. 225), and the predeliberation instruction (CALCRIM No. 3550), as well as rereading the verdict form for count 1. In doing so, the court specifically told the jurors they needed to fill in the allegation that the transportation of the controlled substance "was or was not, based on a unanimous finding, for personal use within the meaning of Penal Code section 1210[, subdivision] (a)." The court clarified that the jurors only needed to do so if they filled out the first part guilty, otherwise they would leave it blank.

As noted above, the jury subsequently returned a guilty verdict on the count 1 transportation offense and specifically found that "the transportation of the controlled substance as alleged in [count 1] was for personal use within the meaning of Penal Code section 1210, [subdivision] (a)." It also found Harris guilty of the count 4 misdemeanor possession of narcotics paraphernalia, but was unable to reach verdicts on the other counts.

B. *The Sentencing Hearing*

At the sentencing hearing, the court noted it had received the probation report as well as a statement in mitigation from Harris's counsel and was prepared to sentence as to the count 1 felony transportation conviction along with its special allegations and the prison priors as well as the misdemeanor

count 4 conviction for possession of drug paraphernalia. After hearing argument from counsel regarding Harris's lack of prior crimes of violence, lack of large drug sales priors, Harris's "bipolar situation" and drug addiction problems, and the request for probation or that Harris be placed in a program for dual diagnosis in prison, and the prosecutor's argument regarding Harris's 30-year criminal record, which included 17 prior convictions, the court denied formal probation and imposed a 19-year prison term.

In doing so, the court specifically imposed a low term of three years for the count 1 transporting offense plus three consecutive three-year terms for the three drug priors found true and seven consecutive one-year terms for the seven prison prior enhancements. The court then imposed a sentence of 180 days for the count 4 misdemeanor conviction to run concurrently with count 1. In sentencing Harris to prison, the court noted that Harris had had "multiple opportunities over the years" to get out of jail, off of parole and to attend drug programs, but had "failed miserably in that attempt." The court stated that there were no circumstances in mitigation noted by the probation officer, that Harris's prior convictions were numerous as evidenced by "ten felony and seven misdemeanor convictions," that he was on parole when he committed these current offenses and that his performance on parole and probation had been unsatisfactory. The court agreed with the probation report that Harris was presumptively ineligible for a grant of probation due to "two or more prior felony convictions."

Harris timely appealed.

## DISCUSSION

■ "Following the enactment of Proposition 36, the 'Substance Abuse and Crime Prevention Act of 2000,' which took effect July 1, 2001, a defendant who has been convicted of a 'nonviolent drug possession offense' *must* receive probation and diversion into a drug treatment program, and may not be sentenced to incarceration as an additional term of probation. [Citation.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1272–1273 [14 Cal.Rptr.3d 1, 90 P.3d 1168] (*Canty*), fn. omitted & italics added.) "Proposition 36 is codified in . . . sections 1210, 1210.1, and 3063.1 and Health and Safety Code section 11999.4 et seq. [Citation.]" (*Canty*, at p. 1273, fn. 1.)

As we noted in *People v. Superior Court (Edwards)* (2007) 146 Cal.App.4th 518 [52 Cal.Rptr.3d 889], the provisions of Proposition 36 essentially "amended state law to create an alternative sentencing scheme for persons convicted of [nonviolent] drug offenses; it requires that qualifying offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, rather than a prison term or probation

without drug treatment, thus eliminating the court's traditional discretion to determine whether such offenders are suitable for probation. [Citations.]" (146 Cal.App.4th at pp. 520–521.) The purposes underlying its enactment were to " ' "enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." ' " (*Id.* at p. 521.)

 Whether a defendant is eligible for treatment under Proposition 36 is in the first instance governed by section 1210.1, which specifically provides in relevant part that " '[n]otwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a *nonviolent drug possession offense* shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program.' " (*People v. Esparza* (2003) 107 Cal.App.4th 691, 696 [132 Cal.Rptr.2d 377], italics added (*Esparza*).) Subdivision (b) of section 1210.1 "sets forth five exceptions to eligibility for otherwise eligible defendants, which can be summarized as: 1) conviction of prior strike offenses within five years; 2) convictions in the same proceeding for a nondrug misdemeanor or for any felony; 3) firearm involvement; 4) refusal of drug treatment; and 5) two prior failures in Proposition 36 treatment programs and proof of unamenability to drug treatment. [Citation.]" (*Esparza, supra,* at p. 696, italics omitted.) In other words, unless a defendant is disqualified from probation by one of these circumstances in subdivision (b), section 1210.1, subdivision (a) mandates the trial court to grant probation with a drug treatment condition for a defendant convicted of *a nonviolent drug possession offense*, which is defined to include, among other things, unlawful "possession, use, or transportation for personal use" of specified controlled substances. (See § 1210, subd. (a);[4] *Esparza, supra,* at p. 699.)

Moreover, "[p]lacement of eligible defendants in Proposition 36 programs is not a discretionary sentencing choice made by the trial judge and is not subject to the waiver doctrine. [Citation.]" (*Esparza, supra,* 107 Cal.App.4th at p. 699.)

 In this case, there was no mention of Proposition 36 in the probation report or by either party or the court at sentencing.[5] Nonetheless, on the face

---

[4] Section 1210, subdivision (a) provides in relevant part: "The term 'nonviolent drug possession offense' means the unlawful personal use, possession for personal use, or *transportation for personal use* of any controlled substance . . . . The term 'nonviolent drug possession offense' does not include the possession for sale, production, or manufacturing of any controlled substance . . . ." (Italics added.)

[5] It appears the lack of any mention of Proposition 36 probation in the probation report may have been caused by the probation officer's erroneous assumption and notation that the section

of the record, the jury's verdict on count 1, which included its express finding made beyond a reasonable doubt that the transportation was for personal use within the meaning of section 1210, subdivision (a), rendered the crime one for a nonviolent drug possession offense and Harris eligible for Proposition 36 probation. Without any applicable disqualification of his eligibility under subdivision (b) of section 1210.1, the trial court was required to grant Harris Proposition 36 probation. That it did not do so, constitutes an unauthorized sentence.

The People concede that "the only way [Harris] is disqualified from Proposition 36 probation, despite his abysmal and lengthy criminal history . . . , is if his conviction for transportation of cocaine base in count [1] was not for personal use." The People also agree that "[i]f in fact [Harris's] prison sentence, instead of a grant to Proposition 36 probation, was erroneous, it was an unauthorized sentence . . . ." The People, however, refuse to recognize the jury's explicit finding of personal use as determining Harris's eligibility for Proposition 36 probation and treatment, and in setting the sentencing parameters for his count 1 offense.

Instead, the People rely on a line of cases that hold that a trial court is not constitutionally precluded from determining by a preponderance of the evidence the sentencing finding, even after an acquittal or not true finding, that a defendant's transportation of a controlled substance was or was not for personal use within the meaning of section 1210, subdivision (a) (see *United States v. Watts* (1997) 519 U.S. 148, 157 [136 L.Ed.2d 554, 117 S.Ct. 633] (*Watts*); *In re Varnell* (2003) 30 Cal.4th 1132, 1141–1142 [135 Cal.Rptr.2d 619, 70 P.3d 1037]; *People v. Dove* (2004) 124 Cal.App.4th 1, 7–11 [21 Cal.Rptr.3d 52] (*Dove*); *People v. Glasper* (2003) 113 Cal.App.4th 1104 [7 Cal.Rptr.3d 4]; *People v. Barasa* (2002) 103 Cal.App.4th 287 [126 Cal.Rptr.2d 628] (*Barasa*)), as well as relying on *People v. Lewis* (1991) 229 Cal.App.3d 259, 264–265 [280 Cal.Rptr. 128], which held that a "not true" finding on a weapon-use enhancement allegation did not preclude the court from considering the conduct of defendant's weapon use as a reason to impose a full consecutive term in that case. From these cases the People argue the jury's section 1210, subdivision (a) finding in this case was equivalent to one for acquittal or not true and did not preclude the trial court from redetermining the matter, which the People assert it impliedly did by imposing a prison term. The People argue that the court's imposition of a prison sentence impliedly determined that the transportation of cocaine base by Harris was for purposes of sale as shown by his conduct, which is supported by the evidence and that he is, therefore, ineligible for Proposition 36 probation.

1210, subdivision (a) allegation to count 1 had been dismissed along with the section 1203.07, subdivision (a)(11) allegations to that count.

■ We recognize that the acquittal of a charge or not true finding of a sentencing allegation generally does not bind the trial court from redetermining the personal use issue for Proposition 36 purposes based on the preponderance of the evidence standard because an acquittal or not true finding merely means that the jury was not convinced beyond a reasonable doubt on such issue. (*Watts, supra,* 519 U.S. at p. 157; *Dove, supra,* 124 Cal.App.4th at p. 11.) Further such determination may be implied from the fact a prison sentence is imposed. (*Dove,* at pp. 10–11; *Barasa, supra,* 103 Cal.App.4th at pp. 291–295.) However, on the particular facts of this case, we simply cannot imply a judicial factfinding at the time of sentencing regarding personal use within the meaning of section 1210, subdivision (a) for Harris's count 1 transportation offense.

Unlike in the cases on which the People rely, the question of whether Harris was "eligible" for Proposition 36 treatment was specifically decided by the jury's verdict and special finding in this case. (Cf., *Dove, supra,* 124 Cal.App.4th at pp. 10–11.) Even though Harris did not present any direct evidence in his defense at trial, through vigorous cross-examination his counsel adduced evidence from the prosecution witnesses to show Harris's transportation of the cocaine base was for his personal use. The People do not challenge the sufficiency of the evidence to support the jury's express finding, made beyond a reasonable doubt, that Harris's transportation of the cocaine base was for personal use. The People neither asked the trial court to redetermine the issue of personal use regarding count 1 at the time of sentencing nor objected to the jury's finding as an improper verdict.[6] Under these circumstances, the court's determination at the time of sentencing was guided by the jury's authorized verdict and express finding. We will not marginalize that finding or permit the People to essentially now have another chance to make their transportation for sales case by implying the trial court made a finding it was not asked to make contrary to the express jury finding already recorded.

Accordingly, we conclude the unauthorized prison sentence imposed by the trial court must be vacated and the matter remanded for the trial court to resentence Harris under Proposition 36.

---

[6] The hybrid type of general verdict form used in this case for count 1, which was submitted by the People, does not violate any statutory prohibition against special verdicts (*People v. Gurule* (2002) 28 Cal.4th 557, 631–632 [123 Cal.Rptr.2d 345, 51 P.3d 224]) and there is no showing it interfered in any way with the jury's deliberative process in finding Harris's guilt on count 1 (see *People v. Davis* (1995) 10 Cal.4th 463, 511–512 [41 Cal.Rptr.2d 826, 896 P.2d 119]).

## DISPOSITION

The sentence imposed in this case is vacated and the matter remanded for resentencing consistent with this opinion. In all other respects, the judgment is affirmed.

McConnell, P. J., and O'Rourke, J., concurred.