Filed 1/29/14  P. v. Valencia CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GABRIEL CERVANTES VALENCIA,<br><br>Defendant and Appellant. | B246514<br><br>(Los Angeles County<br>Super. Ct. No. KA095355) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Modified and, as modified, affirmed with directions.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie C. Brenan and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Gabriel Cervantes Valencia appeals from the judgment entered following his convictions by jury on count 1 – second degree robbery (Pen. Code, § 211) with a principal personally using a firearm (Pen. Code, § 12022.53, subds. (b) & (e)(1)), count 2 – possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)), and count 3 – dissuading a witness by force or threats (Pen. Code, § 136.1, subds. (b)(1) & (c)(1)) with findings as to each offense the offense was committed for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)), appellant was released on bail or on his own recognizance when he committed the offense (Pen. Code, § 12022.1), he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)) and he suffered a prior serious felony conviction (Pen. Code, § 667, subd. (a)).  The court sentenced appellant to prison for a total of 28 years four months.  We modify the judgment and, as modified, affirm it with directions.

### FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence, the sufficiency of which is undisputed except as to count 3, established that on August 25, 2011, shortly before midnight, appellant robbed Danielle Martinez in Azusa as follows.[1]  Martinez was sitting in her car which was parked in front of the apartment building of her friend, Jose Contreras, and she was waiting for him.  A van, its headlights on, drove up and parked in front of, and facing, Martinez's car.  Martinez testified her headlights were on in the beginning, she later turned her car off, and it was not running at the time of the incident.

A man exited the driver's side of the van, approached Martinez's driver's side window, and asked her to roll it down.  She complied.  The man asked Martinez what she was doing there and she replied she was picking up Contreras.  The man asked where Contreras was, and Martinez replied she was waiting for him.  The man lifted the right

---

[1]    There is no dispute appellant committed the offenses alleged in counts 1 and 2.  In light of that fact and our analysis of appellant's contentions on appeal, there is no need to detail the identification evidence appellant was a person who committed the crimes alleged in counts 1 through 3.

2

side of his shirt and displayed a gun in his waistband. Martinez testified the man (hereafter, gunman) asked her if "[she] had his money or something." The gunman asked Martinez to give him her wallet and purse, and also asked if Martinez was spending his money. He was about two feet from Martinez.

Martinez began throwing everything out of her car. At that time, Martinez saw a second man emerge from the passenger side of the van and approach her on the driver's side of her car. The second man began threatening Martinez and told her to throw her belongings into the street.

Martinez's car had four doors. She opened the driver's door and exited. The gunman backed up perhaps a foot. Martinez opened the left rear door and entered the back of her car. She subsequently threw other items out of the car. The second man came to the left rear door where Martinez was and told her to hurry and throw her things out. Martinez testified the second man got pretty close because he hit her on the back of the head, but she also testified she did not know who hit her. Martinez also testified that the gunman hit her on the head and that she told this to an officer. Martinez was in the back seat when she was hit on the back of her head.

After Martinez was hit on the head, Contreras arrived and asked what was happening. Martinez was in the back seat and the two men were on the driver's side of Martinez's car. Martinez testified ". . . I heard them two yell at him saying something, 'Where's my money?'" Contreras fled and the two men chased him. About a minute later, the two men returned and put Martinez's property into the van. Appellant robbed Martinez of various property, including purses, money, credit cards, and her driver's license reflecting her personal information.

One of the two men wrote down Martinez's license plate number. Martinez did not remember which of the two men wrote down her license plate number. Neither man said anything to her after one wrote down her license plate number. Martinez denied telling an officer "they threatened [Martinez] that they had [her] personal information and

3

knew where to find [her] if [she] were to tell anyone."[2] Martinez also denied remembering she told this to an officer. After one of the two men wrote down her license plate number, they left the scene.

Martinez testified there were "only two guys" in this case and she did not see more than two people. About five to seven minutes passed from the time the two men first approached Martinez to the time they finally left. Martinez testified the gunman and second man were probably equally close to Martinez "from where [she] was sitting."

Azusa Police Officer Robert Chivas testified as follows. About 11:57 p.m. on August 25, 2011, Chivas responded to the location and talked with Martinez. She told him that before they left, one of the subjects wrote down her license plate number, although she did not know whether that subject was the gunman or the second man. The following then occurred during the People's direct examination of Chivas: "Q. And then what else did she tell you about one of those two subjects before they left? [¶] A. They had made a mention something to the effect of that they now had her information and that they would be able to find her if she -- if she told anybody what had happened."

Contreras testified as follows. On the night of the robbery, he saw a van drive up in front of Martinez's car and he fled onto a golf course. He knew a person named Gabriel, and appellant was Gabriel. Appellant was an Azusa 13 gang member. Contreras was in protective custody at time of trial, he was a "greenlighter," and he was worried and nervous. During cross-examination, Contreras denied he saw a gun on the night of August 25, 2011. Contreras testified "from him opening his hood of his car and from my knowledge from the past, I knew that's where he would put his gun."

---

[2]     Martinez testified that in the beginning she was concerned about retaliation because "these people had my information." Four days after the robbery, Azusa Police Detective Thomas Avila interviewed Martinez and discussed a photograph she previously had selected during a photographic lineup. During the interview, Martinez asked if the document was a public record and whether someone would "look up and see if, . . . I had pointed someone out or identified someone . . . ." Martinez denied she was afraid at time of trial. She was not afraid at time of trial because she had not identified the robber at the preliminary hearing.

Azusa Police Officer Jason Kimes testified that about 11:57 p.m. on August 25, 2011, he responded to the crime scene and Contreras told him three persons exited a van, Contreras fled, and the three chased him. One of the three was the van's driver, Gabriel.

Kimes also testified Contreras said the following. Gabriel and his "three friends" first approached Contreras and, after Contreras fled, Gabriel and his three friends went in the van, then went to Contreras's friend, who was sitting in a parked car. Gabriel then took out what appeared to be a black semiautomatic handgun from under the hood of the van, and "the three subjects approached [Contreras's] friend who was sitting in the car and robbed her."

Azusa Police Detective Thomas Avila interviewed Contreras at the station and Contreras told him the following. Gabriel's van pulled up right beside Martinez, and "they just jumped out the car and they did what they did." Contreras did not get a good look at what happened until he turned around. Contreras said, "By the time I turned around, I just heard Danielle like screaming kind of and then I just seen -- I seen them open up the hood of their car and from my understanding from before, I know . . . in the hood of his car he always -- that's where he has his stuff . . . ." Avila asked what Contreras meant by "stuff," and Contreras replied, ". . . that's where he puts the stuff. You know, he puts the drugs or his gun. In the hood it's like he has like a stash pot in there." Contreras said ". . . I don't know why he would pull out any drugs at that time, so I was thinking that he was maybe pulling out his gun, . . ."

Contreras told Avila that Contreras guessed "he . . . threatened her" and took her belongings. Contreras also said "it looked like a gun" but he was on the golf course and pretty far from the scene. Contreras also told Avila the following. Contreras could not describe the gun in detail. Gabriel was holding what Contreras thought was a gun. Contreras did not know exactly what happened but they pulled away and left. Contreras returned and Martinez said "they pistol whipped her."

Avila testified that on October 5, 2011, he was driving Contreras to court. Avila testified without objection, "During general conversation, Mr. Contreras had said he got a

phone call from Mr. Valencia.  The phone call he had told -- or was Mr. Contreras getting ahold of victim Martinez to tell her not to testify in this case against him."[3]  In response to the prosecutor's hypothetical questions based on evidence in this case, Avila opined at trial appellant was an Azusa 13 gang member and the robbery, possession of a firearm, and threat at the scene, as well as a telephone threat weeks later, were committed for the benefit of the gang.  Appellant presented no defense witnesses.

## ISSUES

Appellant claims (1) there is insufficient evidence supporting his conviction on count 3, and (2) Penal Code section 654 barred multiple punishment on counts 1 and 2.

## DISCUSSION

1. *There Was Sufficient Evidence Supporting Appellant's Conviction on Count 3.*

    a. *Pertinent Facts.*

During jury argument, the prosecutor argued appellant committed the offense alleged in count 3 based on the dissuasion that occurred on August 25, 2011, i.e., because, according to the prosecutor, appellant told Martinez "not to tell anybody because they've got her information."[4]  The prosecutor also argued appellant committed the offense by force and threat because Martinez was hit on the head with a gun.  The prosecutor did not, during jury argument, refer to appellant's October 5, 2011 telephone call to Contreras (although appellant's counsel did).  Following jury argument, the court

---

[3]    During direct examination, the prosecutor asked Contreras if, during a drive with Avila, Contreras told Avila that Contreras received a call from appellant while appellant was in custody and that appellant told Contreras to tell Martinez not to testify against appellant. Contreras replied, "No.  I didn't get a call from him personally."  The prosecutor asked whether Contreras told a detective that Contreras received such a call, and Contreras replied he did not remember.

[4]    In particular, the prosecutor argued (1) Martinez testified someone wrote down her license plate number, (2) she did not hear the threat, (3) Chivas testified she told him a suspect told her not to tell anyone because they had her information, (4) she did not know who made that statement, but (5) appellant, the driver and gunman, was the person she talked with during the entire incident and he knew she was a robbery victim because he had just robbed her.

6

told the jury that count 3 "may only be based on evidence relating to August 25, 2011" and "may only be based on events of August 25, 2011, and not later in some telephone call."[5] The jury convicted appellant on count 3 as previously indicated.

b. *Analysis.*

Appellant claims there is insufficient evidence supporting his conviction for dissuading a witness by force or threat (count 3). He does not dispute that on August 25, 2011, he robbed Martinez and she was the victim of dissuasion proscribed by Penal Code section 136.1, subdivisions (b)(1) and (c)(1). Instead, appellant argues there was insufficient evidence he was the direct perpetrator of the August 25, 2011 dissuasion, and there was insufficient evidence he aided and abetted the dissuader. We reject the claim. As we discuss below, there was sufficient evidence appellant was a direct perpetrator of the August 25, 2011 dissuasion. There is no need to reach the issue of whether he was an aider and abettor.

First, although the prosecutor asked Chivas, "And then what else did [Martinez] tell you about *one* of those two subjects before they left?" (italics added), Chivas replied without objection, "*They* had made a mention something to the effect of that *they* now had her information and that *they* would be able to find her if she -- if she told anybody what had happened." (Italics added.) Chivas's reply provided substantial evidence *appellant and* his confederate directly perpetrated the August 25, 2011 dissuasion.

Second, following jury argument, the court commented the jury had not been advised that "the only basis for count 3 is the incident at the time of the robbery and not any other point." (See fn. 5, *ante.*) The prosecutor indicated that during jury argument

---

[5] Following jury argument, the court noted the jury had not been advised that "the only basis for count 3 is the incident at the time of the robbery and not any other point." The prosecutor indicated that, during jury argument, he had referred only to that incident. The court indicated it would instruct the jury "the basis of count 3 may only be the event of August 25, 2011" "[a]nd not any subsequent conduct." Later, the court told the jury, "[C]ount 3, dissuading a victim, may only be based on evidence relating to August 25, 2011. Each of the three crimes are alleged to have occurred – and, again, count 3 may only be based on events of August 25, 2011, and not later in some telephone call."

he had referred only to that incident. Fairly read, the prosecutor's comment indicated that, during jury argument, he had engaged in an election of offenses, i.e., he had elected to base count 3 solely on the August 25, 2011 alleged criminal dissuasion and not on appellant's October 5, 2011 telephone call to Contreras. (See *People v. McKinzie* (2012) 54 Cal.4th 1302, 1368; *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) The trial court's subsequent instruction to the jury count 3 "may only be based on evidence relating to August 25, 2011" and "may only be based on events of August 25, 2011, and not later in some telephone call" confirmed the prosecutor's election.

However, Avila's testimony about appellant's October 5, 2011 telephone call to Contreras was admitted into evidence without objection. Although count 3 was based on the alleged dissuasion that occurred on August 25, 2011, Avila's testimony about appellant's October 5, 2011 telephone call, fairly read, indicated that on that date appellant engaged in additional dissuading conduct, i.e., he told Contreras to tell Martinez not to testify against appellant in this case. There is no dispute that on August 25, 2011, either appellant or his confederate engaged in criminal dissuasion to prevent Martinez from testifying in the present case. On October 5, 2011, appellant engaged in substantially similar criminal dissuasion to prevent the exact same person, Martinez, from testifying in the exact same case. The October 5, 2011 telephone call and August 25, 2011 dissuasion shared common features that were sufficiently distinctive they provided substantial evidence appellant was the person who committed both acts. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2, 403.)

Third, even if, as appellant suggests, only appellant's confederate directly and orally perpetrated the August 25, 2011 dissuasion, there was still substantial evidence appellant engaged in that dissuasion. Based on the evidence, the jury reasonably could have concluded appellant and a confederate jointly robbed Martinez. There was also substantial evidence appellant and the confederate worked together and were in *close proximity to each other* whenever they were in Martinez's presence. Thus, the jury reasonably could have concluded beyond a reasonable doubt that even if appellant did not

8

directly and orally perpetrate the August 25, 2011 dissuasion, his confederate did and appellant heard him do so. Although appellant suggests he was unaware of the August 25, 2011 dissuading threat, he concedes it "was established . . . appellant . . . was present when the threat was made."

Our Supreme Court has observed, " 'When a person makes a statement in the presence of a party to an action under circumstances that would normally call for a response if the statement were untrue, the statement is admissible for the limited purpose of showing the party's reaction to it. [Citations.] His *silence*, evasion, or equivocation may be considered as a tacit *admission* of the statements made in his presence.' " (*People v. Riel* (2000) 22 Cal.4th 1153, 1189, italics added.) This admission is an adoptive admission. (*Ibid*.)

In sum, even if appellant's confederate was the only direct, oral perpetrator of the August 25, 2011 dissuasion, the jury reasonably could have concluded beyond a reasonable doubt appellant's confederate, *in appellant's presence and within his hearing*, orally stated "they" had Martinez's information and "they" would be able to find her if she told anyone what had happened. The statement of appellant's confederate thus indicated appellant's confederate *and appellant* had the information and would be able to find her, and implied *criminal* dissuasion by appellant's confederate *and appellant*.

Neither Martinez nor Chivas testified appellant responded to, or denied, the statement of appellant's confederate. Thus, there was substantial evidence appellant's confederate made a statement in the presence of appellant under circumstances that would normally call for a response if the statement were untrue (because the statement implied the confederate *and appellant* were criminally dissuading Martinez), appellant reacted with silence, and his silence was a tacit admission *appellant* had Martinez's information and would be able to find her (and was thus dissuading her). Appellant's silence was an adoptive admission of his confederate's statement. We conclude there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt,

9

appellant was the direct perpetrator of the August 25, 2011 dissuasion. (*Ochoa, supra*, 6 Cal.4th at p. 1206.)[6]

2. *Penal Code Section 654 Did Not Bar Multiple Punishment on Counts 1 and 2.*

During the December 10, 2012 sentencing hearing in the present case, the court sentenced appellant to prison on count 1 (the robbery) and count 2 (possession of a firearm by a felon), then stated Penal Code section 654 did not apply "since the crime [count 2] was committed in advance of the commission of the robbery."

Appellant claims Penal Code section 654 barred multiple punishment on counts 1 and 2. He argues he was convicted on counts 1 and 2 but the robbery and possession of a firearm, respectively, were simultaneous with the result Penal Code section 654 barred multiple punishment on those counts. He also argues that as to the robbery, the jury found true the allegation a *principal* personally used a firearm but found not true the allegation *appellant personally* used a firearm; therefore, he *possessed* the firearm for purposes of count 2 only as an aider and abettor, and there is insufficient evidence that, *prior* to the robbery, he possessed the firearm for purposes of count 2 as an aider and abettor. We reject the claim. As we discuss below, there was sufficient evidence appellant was a direct perpetrator of the August 25, 2011 firearm possession prior to the robbery. There is no need to reach the issue of whether he was an aider and abettor.

Penal Code section 654, as interpreted by our Supreme Court, prohibits multiple punishment for offenses committed during an indivisible transaction. Whether a course of conduct is indivisible depends on the intent and objective of the actor. (*People v.*

---

[6]     Appellant's reliance on *People v. Leon* (2008) 161 Cal.App.4th 149 (*Leon*), is misplaced. In *Leon*, the People argued on appeal the alleged fact the defendant *stared* at the victim, along with other evidence, provided sufficient evidence the defendant *aided and abetted* a codefendant who committed witness intimidation. *Leon assumed without deciding* staring could constitute an "act" that would support aiding and abetting liability, then rejected the People's argument, holding there was *no evidence* of the alleged staring. In the present case, we conclude there was substantial evidence appellant was a *direct perpetrator* based on, inter alia, substantial evidence appellant directly and *orally* dissuaded Martinez on August 25, 2011, and/or substantial evidence appellant adopted his confederate's direct, oral dissuasion of that date.

10

*Perez* (1979) 23 Cal.3d 545, 551.)  If all offenses are incident to one objective, the defendant may not be punished for more than one.  However, if the defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the defendant may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.  (Cf. *People v. Bradley* (2003) 111 Cal.App.4th 765, 769, fn. 3.)

Whether Penal Code section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination.  The trial court determines a defendant's intent and objective under section 654 by a preponderance of the evidence.  (Cf. *People v. Cleveland* (2001) 87 Cal.App.4th 263, 266, 268-270 (*Cleveland*); see *People v. Harris* (2009) 171 Cal.App.4th 1488, 1497-1498 (*Harris*); *People v. Lewis* (1991) 229 Cal.App.3d 259, 264; *People v. Levitt* (1984) 156 Cal.App.3d 500, 515.)  The court's findings will not be reversed on appeal if there is any substantial evidence to support them.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).) We view the evidence in the light most favorable to respondent and presume in support of the sentence the existence of every fact the trial court reasonably could have deduced from the evidence.  (*People v. Tarris* (2009) 180 Cal.App.4th 612, 627.)

In *People v. Bradford* (1976) 17 Cal.3d 8 (*Bradford*), a case similar to the present one, our Supreme Court stated, "The standard for applying section 654 in the circumstances of this case was restated in *People v. Venegas* (1970) 10 Cal.App.3d 814. 'Whether a violation of section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case.  Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved.  On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held

11

to be improper where it is the lesser offense.' [Citation.]" (*Bradford*, at p. 22.) In *Jones*, the appellate court "conclude[d] that section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*Jones*, *supra,* 103 Cal.App.4th at p. 1145.)

In the present case, there was substantial evidence from the testimony of Martinez, Contreras, and Kimes, and the statements Contreras made to Avila, considered together, that on August 25, 2011, appellant arrived at the crime scene and, consistent with his habit, possessed on that day a gun in a stash location under the hood of his van. This was gun possession on August 25, 2011, that was distinctly antecedent and separate from, and unrelated to, the robbery, and was not merely possession in conjunction with the robbery. The fact Contreras, who was in protective custody and was worried and nervous at trial, may have provided conflicting testimony as to whether he saw appellant in possession of a gun does not compel a contrary conclusion.

The fact the jury found not true an allegation appellant personally used a firearm when committing the robbery (count 1) does not compel a contrary conclusion. Whether Penal Code section 654 applies is manifestly a sentencing issue (see *Cleveland*, *supra,* 87 Cal.App.4th at p. 268) and, as mentioned, the standard of review applicable to a sentencing court when determining a section 654 issue is preponderance of the evidence.

A jury's not true finding on a personal use allegation relating to an offense generally does not bind a sentencing court from redetermining the personal use issue as a basis for *sentencing* based on the preponderance of the evidence standard because the not true finding merely means the jury was not convinced beyond a reasonable doubt on the personal use issue. (Cf. *Harris, supra*, 171 Cal.App.4th 1488, 1497-1498; see *In re Coley* (2012) 55 Cal.4th 524, 554.) The sentencing court was free to conclude appellant directly possessed the firearm during the robbery and, in any event, the issue of whether appellant engaged in *antecedent, separate* firearm *possession* was not presented by the Penal Code section 12022.53, subdivision (b) enhancement allegation appellant personally *used* a firearm *in the commission* of robbery.

12

3. *Appellant Is Entitled to Additional Precommitment Credit.*

Appellant was arrested on August 29, 2011, and remained in custody until the court sentenced him on December 10, 2012, a total of 470 days, inclusive. At the December 10, 2012 sentencing hearing, the court orally awarded appellant 523 days of precommitment credit, consisting of 455 days of custody credit and 68 days of conduct credit. This award is also reflected in the abstract of judgment. Respondent concedes appellant's claim he is entitled to an additional 15 days of custody credit. We accept the concession. Respondent also correctly notes appellant is entitled to an additional two days of conduct credit. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 731; *People v. Smith* (1989) 211 Cal.App.3d 523, 527; Pen. Code, §§ 667.5, subd. (c)(9), 2900.5, subd. (a), 2933.1, subd. (c), & 4019.) We will modify the judgment and direct the trial court to amend the abstract of judgment accordingly (cf. *People v. Humiston* (1993) 20 Cal.App.4th 460, 466).

### *DISPOSITION*

The judgment is modified by awarding appellant a total of 540 days of precommitment credit, consisting of 470 days of custody credit pursuant to Penal Code section 2900.5, subdivision (a), and 70 days of conduct credit pursuant to Penal Code sections 2933.1, subdivision (c) and 4019, and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.