Filed 7/30/14  P. v. Duke CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEE BRENT DUKE,<br><br>    Defendant and Appellant. | B250784<br><br>(Los Angeles County<br>Super. Ct. No. VA129438) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Josh M. Fredericks and Raul A. Sahagun, Judges.  Affirmed.

_____

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Lee Brent Duke appeals from the judgment entered after a jury convicted him of possession of methamphetamine under Health and Safety Code section 11377, subdivision (a). He contends the trial court erred by denying his motion to suppress evidence and by failing to grant him probation pursuant to Proposition 36. We reject his contentions and thus affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 20, 2013, Andrew Fox, a police officer with nine years experience, applied for a warrant to search for illegal drugs at a residence and the trailer parked on its driveway, in Duke's car and on his person. The officer had narcotics training and had investigated and arrested several hundred drug sellers. In an affidavit supporting issuance of the warrant, Officer Fox stated that: (1) an anonymous concerned citizen had informed him that Duke recently moved into the residence and was selling methamphetamine at the property; (2) a confidential informant reported witnessing Duke sell a half-ounce of methamphetamine "within the last week" at the residence; (3) in a surveillance on February 27, 2013, Officer Fox had observed Duke appear to "have access to the residence" to "come and go," as well as to the trailer; (4) Officer Fox had discovered cooking directions for methamphetamine on Duke's person several months earlier; and (5) Duke had numerous prior convictions for the sale of methamphetamine. Given this information, Officer Fox believed that Duke was connected to drug sales at the residence and trailer. Based on the affidavit, the magistrate issued the warrant as requested.

Before executing the warrant, Officer Fox conducted three additional surveillances of the residence and the trailer. In the first two surveillances, he observed Duke coming and going from the residence to the trailer and other people briefly stopping by the trailer. In the third surveillance, which lasted three to four hours, Officer Fox saw Duke remove a black canvas bag with a sparkle design from his car and take it into the trailer. The officer also observed six or seven people come and go from the property at different times. During the visits, the individuals spoke with Duke on the driveway, Duke then

2

went into the trailer, and the individuals followed by walking up to the trailer. All the visits were brief, each lasting no more than five minutes.

On March 27, 2013, Officer Fox and his partner executed the search warrant. His partner conducted a traffic stop of Duke. Officer Fox obtained a key from Duke's key ring in the car ignition. The key opened the trailer door. In the trailer, Officer Fox found the black canvas bag with the sparkle design, which contained a digital scale, $1,200 cash in small denominations, and 178 grams of methamphetamine packaged in four separate plastic bags. At the foot of the bed, the officer retrieved an envelope addressed to Nina and James, care of Lee (Duke's first name) and Nina, at the residence and a cellular telephone bill, dated November 23, 2012, addressed to Duke at a different address. Officer Fox also saw men's clothing and the word "Lee" written in several locations inside the trailer.

On April 29, 2013, the People filed an information charging Duke with one count of possession for sale of a controlled substance in violation of Health and Safety Code section 11378. The information specially alleged three prior-prison-term enhancements under Penal Code section 667.5, subdivision (b). Duke pleaded not guilty and denied the special allegations. He moved to suppress evidence of all items seized from the trailer, arguing that the evidence was obtained in violation of his constitutional rights. The trial court denied Duke's motion.

A jury found Duke not guilty of possession for sale of a controlled substance in violation of Health and Safety Code section 11378, but guilty of the lesser included offense of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). Duke waived his right to a jury trial on the special allegations. The trial court found that Duke had served two prior prison terms within the meaning of Penal Code section 667.5, subdivision (b), but dismissed the third special allegation under that provision. The court sentenced him to five years in county jail: the upper term of three years for the Health and Safety Code section 11377, subdivision (a), violation plus two one-year enhancements under Penal Code section 667.5, subdivision (b). Duke timely appealed.

**DISCUSSION**

1.      *The Trial Court Did Not Err By Denying the Motion to Suppress*

The Fourth Amendment to the United States Constitution "'proscribes all unreasonable searches and seizures'" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224) "'to safeguard the privacy and security of individuals against arbitrary invasions by government officials'" (*People v. Banks* (1993) 6 Cal.4th 926, 934).  "'Under the Fourth Amendment, a[] [judicial] officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor[e] from facts or circumstances presented to him under oath or affirmation.'"  (*Illinois v. Gates* (1983) 462 U.S. 213, 276.)  As a result, the exclusionary rule is a "'judicially created remedy'" that attempts to deter illegal searches and seizures by generally barring the prosecution from introducing evidence obtained without probable cause.  (*Davis v. U.S.* (2011) 131 S.Ct. 2419, 2427-2428.)

Even if probable cause is lacking, however, evidence seized during a search executed on the warrant need not be suppressed if the officer performing the search had a good faith belief that the affidavit established probable cause for the warrant.  Under the good faith exception to the probable cause requirement, the United States Supreme Court has held that the exclusionary rule should not be applied when evidence was "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." (*U.S. v. Leon* (1984) 468 U.S. 897, 900, 913 (*Leon*).)  Application of the good faith exception is determined by an objective standard assessing "whether a reasonable and well-trained officer 'would have *known* that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'"  (*People v. Camarella* (1991) 54 Cal.3d 592, 605-606 (*Camarella*).)  The standard requires that an officer have conducted more than a "mere 'bare bones' investigation" (*Camarella*, at pp. 606-607; see also *Leon*, at p. 926; *People v. French* (2011) 201 Cal.App.4th 1307, 1318-1319) and possess ""'reasonable knowledge of what the law prohibits"'" (*French*, at p. 1324).

4

Duke argues that the trial court erred by denying his motion to suppress the evidence seized from the trailer. He contends that probable cause did not support issuance and execution of the warrant and that the good faith exception to the exclusionary rule does not apply because the affidavit was "'"so lacking in indicia of probable cause"' that it would be '"entirely unreasonable"' for an officer to believe such cause existed." (*Camarella*, *supra*, 54 Cal.3d at p. 596, italics omitted.) Whether or not probable cause existed for the warrant, the good faith exception to the exclusionary rule supports the denial of Duke's suppression motion.

Under the objective standard for evaluating the good faith exception, Officer Fox's affidavit was not "'"so lacking in indicia of probable cause"'" that it was "'"entirely unreasonable"'" for him to believe such cause existed. (*Camarella*, *supra*, 54 Cal.3d at p. 596, italics omitted.) Officer Fox, well trained in the field of narcotics investigations, conducted more than a "mere 'bare bones' investigation." (*Id*. at p. 606.) After receiving a tip from a concerned citizen, the officer contacted a confidential informant, who reported that he had witnessed Duke selling methamphetamine at the residence within a week before the warrant application. The officer also surveilled the residence and trailer before applying for the warrant. He discovered that Duke had prior convictions for the sale of methamphetamine and several months earlier had possessed directions for cooking methamphetamine. After issuance of the warrant, Officer Fox undertook three additional surveillances of the residence and trailer before executing the warrant and observed conduct suggesting possible narcotics sales. Based on the multiple components of the investigation, as well as Officer Fox's personal experience in investigating several hundred narcotics cases, it was not unreasonable for him to believe the affidavit established probable cause.

The instant case is similar to *Camarella* in which our Supreme Court held that the good faith exception applied when the officer had conducted more than a "mere 'bare bones' investigation" and thus was reasonable in relying on the warrant. (*Camarella*, *supra*, 54 Cal.3d at pp. 606-607.) In *Camarella*, after receiving information from an anonymous citizen, the officer confirmed the criminal activity with an untested

5

confidential informant, checked the suspect's records for prior drug possession and verified that the suspect lived at the given address. (*Id.* at pp. 597-599.) This investigation was sufficient to establish good faith, even if an argument could be made that the affidavit presented a "close or debatable question" on probable cause. (*Id.* at p. 606.) In the instant case, Officer Fox did more than the officer in *Camarella* and thus was not unreasonable in relying on the warrant.

Duke argues that good faith is lacking because Officer Fox did not do everything he could before applying for the warrant, such as arranging a controlled buy, to ensure probable cause. The relevant question, however, is not whether a reasonable officer could have undertaken an additional investigation to support the affidavit. Rather, the question is whether the officer would have known that the affidavit, as it existed when presented to the magistrate, was legally insufficient without additional corroboration. (*Camarella*, *supra*, 54 Cal.3d at p. 606.) Thus, even if Officer Fox could have taken additional measures to further corroborate the information in his affidavit, the possibility of a greater investigation does not establish, as Duke suggests, a lack of good faith.

Duke also cites *People v. Hulland* (2003) 110 Cal.App.4th 1646, 1656, to argue that an officer's reliance on a warrant that had only a "'paltry showing'" of probable cause is not objectively reasonable, particularly when "'the affiant is also one of the executing officers.'" The "'paltry showing'" in *Hulland* was due to the officer waiting 52 days after a controlled buy of marijuana before seeking a search warrant and failing, during that 52-day delay, to determine whether defendant's criminal activity was continuing. (*Id*. at pp. 1649-1650, 1655-1656.) In addition, although the warrant was for the search of a residence, the controlled buy took place in a parking lot in a different city, rendering the officer's suspicion that the defendant was keeping drugs at the residence unreasonable. (*Id*. at pp. 1653, 1655-1656.) Officer Fox's affidavit, however, did not present a "'paltry showing,'" but rather provided sufficient information for a reasonable and well-trained officer to believe probable cause existed. (*Id*. at p. 1656.) In contrast to *Hulland*, Officer Fox applied for a warrant within a week of the confidential informant witnessing Duke's drug sale at the residence and three weeks after conducting a

6

surveillance of the residence and trailer. Furthermore, unlike the affidavit in *Hulland*, Officer Fox's affidavit gave numerous reasons to believe that Duke's criminal activity took place at the searched locations. Thus, Officer Fox's position as both the affiant and executing officer does not preclude application of the good faith exception.

Duke also contends that information in Officer Fox's affidavit was stale because the directions for cooking methamphetamine were found on Duke's person several months before application for the warrant and the date that Officer Fox received the information from the concerned citizen was not provided in the affidavit. The affidavit, however, reasonably supported that criminal activity was continuing at the location. Officer Fox conducted his surveillance of the residence less than a month before issuance of the warrant. The confidential informant saw Duke selling methamphetamine within a week of issuance of the warrant. The three additional surveillances of the residence and trailer after issuance of the warrant but before its execution demonstrate that Officer Fox ensured the information provided by the tipsters was fresh when he executed the warrant. Under these circumstances, an objectively reasonable and well-trained officer could have believed the information was sufficiently fresh to support probable cause. (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1798 [staleness not based on reviewing court's agreement "with the officer's assessment [that] the information is sufficiently fresh," but on "whether a reasonable, well-trained officer would know the facts are too stale to support a determination of probable cause"]; see also *Camarella*, *supra*, 54 Cal.3d at p. 606.)

2.   *The Trial Court Did Not Err By Finding Duke Ineligible for Proposition 36 Probation*

Penal Code 1210.1, subdivision (a), which codified portions of Proposition 36, provides that "any person convicted of a nonviolent drug possession offense shall receive probation." (See *People v. Guzman* (2005) 35 Cal.4th 577, 585.) As relevant, nonviolent drug possession is "possession for personal use" of a controlled substance. (Pen. Code, § 1210, subd. (a); *In re Ogea* (2004) 121 Cal.App.4th 974, 982.) The defendant has the

burden to prove possession for personal use. (*People v. Barasa* (2002) 103 Cal.App.4th 287, 296; see also *People v. Dove* (2004) 124 Cal.App.4th 1, 10.)

Duke contends that, because the jury found him not guilty of possession for sale of a controlled substance, he qualified for probation under Proposition 36. According to Duke, the trial court had no authority to disregard the jury's verdict and sentence him to jail by concluding, based on a preponderance of the evidence, that he did not possess the drugs for personal use.[1] His argument is contrary to federal and state authority.

In *U.S. v. Watts* (1997) 519 U.S. 148, 157, the United States Supreme Court held that a sentencing court may consider conduct for which the jury acquitted the defendant "so long as that conduct has been proved by a preponderance of the evidence." An acquittal by the jury is not a finding of fact because a jury acquittal is not proof that a defendant is innocent but rather only of the "'existence of a reasonable doubt as to his guilt.'" (*Id*. at p. 155.) Thus, "'an acquittal . . . does not preclude the Government from relitigating an issue . . . by a lower standard of proof.'" (*Id.* at p. 156.)

California courts have applied this principle to Proposition 36 determinations. Our courts have held that a jury acquittal on the charge of possession for sale of a controlled substance does "not bind the trial court" because the acquittal means only that the jury was not convinced beyond a reasonable doubt of the possession for sale. (*People v. Dove*, *supra*, 124 Cal.App.4th at p. 11.) A court has "'the inherent authority'" to consider trial testimony in determining a defendant's eligibility for Proposition 36 probation (*People v. Glasper* (2003) 113 Cal.App.4th 1104, 1113) so long as it makes such a determination by a preponderance of the evidence (*Dove*, at p. 11). In the instant case, regardless of the jury verdict, the court had the "'inherent authority'" to determine by a preponderance of the evidence that Duke was ineligible for Proposition 36 probation

---

[1] Duke does not challenge the sufficiency of the evidence supporting the trial court's conclusion by a preponderance of the evidence that he did not possess methamphetamine for personal use but merely argues that the trial court did not have the power to make such a determination.

8

because he did not possess the methamphetamine for personal use.[2] (*Glasper*, at p. 1113.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


MILLER, J.[*]

---

[2]    As the trial court recognized, this case is distinguishable from *People v. Harris* (2009) 171 Cal.App.4th 1488, 1494, in which the jury received an instruction and made an affirmative finding that defendant's possession was for personal use within the meaning of Penal Code section 1210, subdivision (a). In contrast, here, the jury was not instructed on Penal Code section 1210 and did not make an affirmative finding of possession for personal use, but merely determined that Duke was not guilty of possession for sale.

[*]    Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.